ADDISON TOWNSHIP v GOUT

Docket No. 83379. Decided July 14, 1989. On application by the plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave, reversed in part the judgments of the Court of Appeals and the circuit court and remanded the case to the circuit court. Judgment vacated and leave to appeal granted August 30, 1989. 433 Mich 1201.

Addison Township brought an action in the Oakland Circuit Court against Peter Gout, the Lakeville Gas Associates, and the Department of Natural Resources, alleging that construction of a pipeline and the plan to process gas from outside the Leonard Gas Field violates its zoning ordinance and the special use permit that had originally been issued to the Michigan Consolidated Gas Company, which allows only gas from the Leonard Field to be processed there, and not from other wells. The court, David F. Breck, J., denied injunctive relief and dismissed the case, finding that jurisdiction relative to wells is vested exclusively in the Supervisor of Wells. The Court of Appeals, CYNAR, P.J., and BEASLEY and K. B. GLASER, JJ., affirmed in part and reversed in part in an opinion per curiam (Docket No. 98299). The plaintiff seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice RILEY, and Justices BRICKLEY, CAVANAGH, BOYLE, ARCHER, and GRIFFIN, the Supreme Court *held:*

The Supervisor of Wells has exclusive jurisdiction over wells alone, and not over all aspects of the production process.

Oil and gas are natural resources with fixed locations and cannot be moved to a more favorable site. Lest a local community act irresponsibly, the Supervisor of Wells has broad powers, but since the production process need not be performed at any particular location, economic and political forces can determine the appropriate locations for such facilities.

Reversed in part and remanded.

Justice LEVIN, writing separately, would grant leave to appeal. He stated that peremptory disposition is not appropriate in this case. Peremptory reversal should be reserved for those cases in which the law is settled and no factual assessment is required. If leave to appeal were granted, the Department of

Natural Resources would be able to brief the issue dealt with in the per curiam opinion. The statute in question should not be construed to limit the DNR's authority without affording it an opportunity to be heard. If this Court were to grant leave to appeal, it might conclude on plenary consideration that the Legislature intended the construction of the statute adopted by the Court of Appeals.

171 Mich App 122; 429 NW2d 612 (1988) reversed in part.

*Nicholas L. Treinen* and *Robert L. Bunting* for the plaintiff.

*Nancy T. Slutsky* for intervening plaintiff Oakland County Board of Road Commissioners.

*John A. DeMarco* for defendants Gout and Lakeville Gas Associates.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Michael C. McDaniel*, Assistant Attorney General, for defendant Department of Natural Resources.

PER CURIAM. We are called upon to interpret a passage from the Township Rural Zoning Act (TRZA).[1] Specifically, we must determine whether the activities that form the basis of the dispute between these parties fall within the exclusive jurisdiction that the TRZA vests in the Supervisor of Wells.[2] The trial court and the Court of Appeals have agreed with the defendants' expansive view of that exclusive jurisdiction, but we believe that the Legislature has drawn the exclusive jurisdiction more narrowly. Accordingly, we reverse in part the judgments entered below.

I

In Addison Township of Oakland County is a

---

[1] MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*

[2] The Director of the Department of Natural Resources acts as the Supervisor of Wells. MCL 319.3(1); MSA 13.139(3)(1).

small community named Leonard. The town has given its name to a nearby natural gas field known as the Leonard Field. Roughly speaking the Leonard Field has the same boundaries as Addison Township.

In 1973, Michigan Consolidated Gas Company sought rezoning of a thirty-acre parcel on the Leonard Field, for the purpose of building a gas conditioning plant.[3] In August, 1973, Addison Township and Michigan Consolidated signed a written agreement which recited that the rezoning was being approved on certain conditions. One was Michigan Consolidated's promise to dismantle and remove the plant after five years. The agreement further provided that Michigan Consolidated would be entitled to a "reasonable extension [of the five-year] period" if it could demonstrate that its plant was being run properly "and that continued conditioning of gas produced from the Leonard Gas Field is essential for continued utilization of the field." That is one of several references to the Leonard Field found in the August 1973 agreement.

The record contains the agreements between Addison Township and Michigan Consolidated, but it is not clear exactly what took place concerning a change of zoning in 1973. The August 1973 agreement recites that a rezoning was approved in June 1973, subject to Michigan Consolidated's agreement to make certain commitments. In the next paragraph of the August 1973 agreement, though, it states that the parties entered into the agreement "in consideration of the rezoning." Thus the record not only fails to make clear what exactly

[3] After emerging from a well, natural gas normally needs to be "processed" or "scrubbed" before it can be used for commercial or residential purposes.

took place as to the change of zoning, but it also is unclear as to whether this was "contract zoning."[4]

Addison Township and Michigan Consolidated agreed in July, 1979, to extend the life of the plant. This agreement also refers in several places to gas from the Leonard Field.

In 1984, Michigan Consolidated sold its interest in the plant to defendants Peter Gout and Lakeville Gas Associates (LGA). The August 1973 agreement had said that it was "binding upon" the "successors and assigns" of Addison Township and Michigan Consolidated. The agreement was otherwise silent as to Michigan Consolidated's right to assign its interest. The July 1979 agreement said that it continued the terms of the July 1973 pact.

In the mid-1980s, Mr. Gout and LGA built a pipeline from Macomb County to the Leonard Field plant. The purpose was to bring natural gas drawn from another well to the Leonard Field plant for processing. It appears that Mr. Gout and LGA built this pipeline with the permission, and to the satisfaction, of the Department of Natural Resources.

Addison Township has taken the position that its agreement with Michigan Consolidated permits the plant to be used only for processing natural gas that is drawn from the Leonard Field, and not from other wells. The decision by Mr. Gout and LGA to process gas drawn from beyond the Leonard Field is said by Addison Township to be a violation of the special use permit that the township issued to Michigan Consolidated.

---

[4] The trial court employed that phrase to characterize the zoning change, saying that "[t]he law does not permit contract zoning . . . ." That is true in the sense that "contract zoning" is a conclusory term that is applied to some types of improper agreements. But it is equally clear that a zoning authority can place certain conditions upon a proposed use. See, generally, 82 Am Jur 2d, Zoning and Planning, § 17, pp 411-413.

II

In September, 1986, Addison Township sued Mr. Gout, LGA, and the Department of Natural Resources.[5] The township alleged that the construction of the pipeline and the plan to process gas from outside the Leonard Field would violate its zoning ordinance and the special use permit that had originally been granted to Michigan Consolidated. The township claimed damages for an anticipatory breach of the agreement. The township further stated that the improper operation of the plant would constitute a nuisance per se.[6] MCL 125.294; MSA 5.2963(24). The township's complaint also alleged violations of the Michigan Environmental Protection Act,[7] the Wetland Protection Act,[8] and the Inland Lakes and Streams Act.[9]

Addison Township sought a preliminary injunction, but the request was denied by the circuit court, which reasoned:

> The Court's going to deny the request for preliminary injunction on the basis that the Township is attempting to have this Court find [that MCL 125.294; MSA 5.2963(24)] applies. It would have

[5] The Oakland County Board of Road Commissioners later intervened as plaintiff, complaining that Mr. Gout and LGA had constructed their pipeline under some public roads without obtaining the board's approval. The present appeal does not concern this aspect of the case.

[6] Uses of land, and dwellings, buildings, or structures, including tents and trailer coaches, used, erected, altered, razed, or converted in violation of local ordinances or regulations adopted under the authority of this act are a nuisance per se. The court shall order the nuisance abated and the owner or agent in charge of the dwelling, building, structure, tent, trailer coach, or land is guilty of maintaining a nuisance per se. [MCL 125.294; MSA 5.2963(24).]

[7] MCL 691.1201 et seq.; MSA 14.528(201) et seq.

[8] MCL 281.701 et seq.; MSA 18.595(51) et seq.

[9] MCL 281.951 et seq.; MSA 11.475(1) et seq.

this Court hold that the use of this land is in violation of local ordinance or regulations adopted under the authority of this Act as a nuisance per se. The Court does not find that the use of this land is in violation of the Ordinance and the Court finds that the Township is attempting to force an invalid agreement as it applies to Lakeville Gas in that the Township is attempting to impose conditions on a special use. The law does not permit contract zoning, which in effect is what the Township is attempting to do.

The Court is also going to find that this Court has no further jurisdiction in the matter in that [MCL 125.271; MSA 5.2963(1)] vests jurisdiction of this type of operation in the DNR and consequently, I'll dismiss this action.

The trial court's subsequent order denied injunctive relief and dismissed the township's complaint.[10]

The language relied upon by the circuit court is found near the end of the first section of the TRZA:

A township board shall not regulate or control the drilling, completion, or operation of oil or gas wells, or other wells drilled for oil or gas exploration purposes and shall not have jurisdiction with reference to the issuance of permits for the location, drilling, completion, operation, or abandonment of those wells. The jurisdiction relative to wells shall be vested exclusively in the supervisor of wells of this state, as provided in [MCL 319.1-319.27; MSA 13.139(1)-13.139(27)]. [MCL 125.271; MSA 5.2963(1).]

With a modification that is not within the scope

[10] The intervening complaint filed by the Oakland County Board of Road Commissioners was dismissed without prejudice.

of the present appeal,[11] the Court of Appeals affirmed the circuit court's order. *Addison Twp v Gout,* 171 Mich App 122, 125; 429 NW2d 612 (1988).

The Court of Appeals identified the question as "whether defendants' plant and pipeline fall within the meaning of 'location, drilling, completion, operation, or abandonment of . . . wells,' as contemplated by MCL 125.271; MSA 5.2963(1)." The Court observed that the Legislature has not explicitly placed processing plants and pipelines within the jurisdiction of the Supervisor of Wells, but the Court nevertheless interpreted the Legislature's declaration of policy[12] as a directive that a

[11] The Court of Appeals held that the circuit court had improperly dismissed the township's claim under the Michigan Environmental Protection Act. MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.* It remanded the case to the circuit court for "trial on the EPA claims stated in plaintiff's complaint." *Id.,* p 127. In their submission to this Court, Mr. Gout and LGA have expressed dissatisfaction with that ruling, but they have not filed an application for leave to appeal as cross-appellant.

[12] It has long been the declared policy of this state to foster conservation of natural resources to the end that our citizens may continue to enjoy the fruits and profits thereof. Failure to adopt such a policy in the pioneer days of the state permitted the unwarranted slaughter and removal of magnificent timber abounding in the state, which resulted in an immeasurable loss and waste. In an effort to replace some of this loss, millions of dollars have been spent in reforestation, which could have been saved had the original timber been removed under proper conditions.

Within the past few years extensive deposits of oil and gas have been discovered which have added greatly to the natural wealth of the state, and if properly conserved can bring added prosperity for many years in the future to our farmers and land owners, as well as to those engaged in the exploration and development of this great natural resource. The interests of the people demand that exploitation and waste of oil and gas be prevented so that the history of the loss of timber may not be repeated.

It is accordingly the declared policy of the state to protect the interests of its citizens and land owners from unwarranted waste of gas and oil and foster the development of the industry along the most favorable conditions and with a view to the ultimate recovery of the maximum production of these natural

liberal construction should be applied to the exclusive powers of the Supervisor of Wells. The Court of Appeals continued:

> By construing liberally the powers of the Supervisor of Wells, we conclude that the DNR director does have jurisdiction over the regulation of defendants' gas processing plant and pipeline. When it enacted the Township Rural Zoning Act and established a Supervisor of Wells, the Legislature implemented a policy of state control of oil and gas production. The processing and transportation of natural gas is necessary to obtain maximum benefit from the resources extracted from wells. Processing plants, like wells, appear to be necessary structures whose benefits citizens enjoy but whose facilities make undesirable neighbors. Recognizing this problem, the Legislature appears to say that localities cannot prevent resource development for parochial reasons. The trial court correctly ruled that the Township Rural Zoning Act vests jurisdiction over defendants' operations in the DNR. [171 Mich App 126.]

The Court of Appeals then stated, "Because we affirm the lower court's ruling that defendants' plant and pipeline are not subject to the local zoning ordinance, we need not address plaintiff's claims regarding contract zoning and nuisance per se."[13] *Id.*

Addison Township has applied to this Court, seeking leave to appeal. In lieu of granting leave

---

products. To that end this act is to be construed liberally in order that effect may be given to sound policies of conservation and the prevention of waste and exploitation. [MCL 319.1; MSA 13.139(1).]

[13] The Court of Appeals then addressed the circuit court's decision to dismiss the claims made by the township under the three environmental statutes. The Court affirmed the dismissal of the WPA and ILSA claims. The township does not challenge those rulings in its application to this Court for leave to appeal. As mentioned in footnote 11, the Court of Appeals reversed the circuit court's dismissal of the township's EPA claim.

to appeal,[14] we reverse in part the judgments of
the Court of Appeals and the circuit court.

III

The statute clearly states that the exclusive
jurisdiction of the Supervisor of Wells includes
"the drilling, completion, or operation of oil or gas
wells, or other wells drilled for oil or gas explora-
tion purposes," as well as "the issuance of permits
for the location, drilling, completion, operation, or
abandonment of those wells." On innumerable
occasions, we have stated that an unambiguous
statute is to be applied as written. A recent occa-
sion for the application of this principle was *Oak-
land Co v Michigan*, 432 Mich 49; 438 NW2d 61
(1989). In that case, we described a statute as
"clear" and "susceptible to a literal reading that
results in a conclusion not inconsistent with the
purposes of the statute." *Id.*, p 58, n 2. We also
observed that there was nothing in the legislative
history of the statute "or in its overall scheme or
objective" to suggest that a literal interpretation
was inappropriate.

The same approach is proper here. A plain and
literal reading of the statute would exclude from
the exclusive jurisdiction of the Supervisor of
Wells the processing plant and the pipeline that
have given rise to the present dispute.

The phrase "drilling, completion, or operation,"
and the phrase "location, drilling, completion, op-
eration, or abandonment" contain words that
could perhaps be interpreted beyond their literal
meaning. However, such an approach overlooks
the fact that the statute speaks of the "drilling,
completion, or operation *of oil or gas wells*," and of
the "location, drilling, completion, operation, or

---

[14] MCR 7.302(F)(1).

abandonment *of those wells."* To place the defendants' processing plant and pipeline within the exclusive jurisdiction of the Supervisor of Wells, one must determine that these facilities constitute the "operation" of a well. Mindful of the legislative purpose quoted in footnote 12, we believe that there is no basis for stretching the statutory language that far. The ordinary meaning of the word "well" certainly does not include a processing plant or a horizontal intercounty pipeline.

To apply this statute as written is not inconsistent with the purpose stated by the Legislature when it created the Supervisor of Wells. Permitting a township to regulate the location of a gas processing plant will not cause "exploitation and waste of oil and gas," and will not interfere with "the ultimate recovery of the maximum production of these natural products." MCL 319.1; MSA 13.139(1).

Moreover, there is a sound basis for the Legislature's decision to give the Supervisor of Wells exclusive jurisdiction over wells alone, and not over all aspects of the production process.[15] Oil and gas are natural resources with fixed locations. A gas field cannot be moved to a more favorable site. Lest a local community act irresponsibly with an immovable state resource, the Legislature has given the Supervisor of Wells broad powers. The rest of the production process, however, need not be performed at any particular location. One can depend on economic and political forces to determine appropriate locations for such facilities.

IV

For these reasons, we find that the circuit court

---

[15] The legislative history of MCL 125.271; MSA 5.2963(1) is scant. Nothing therein alters our analysis.

erred in its determination that the Supervisor of
Wells had exclusive jurisdiction over the location
and operation of the processing plant and the
pipeline. We otherwise express no view as to the
merits of the township's claims. We remand this
case to the Oakland Circuit Court for further
proceedings consistent with this opinion.[16]

The case before us involves a processing plant
and a lengthy horizontal pipeline. We hold that
neither falls within the exclusive jurisdiction of
the Supervisor of Wells over certain matters relat-
ing to "wells." We are mindful that any working
well requires at least a small amount of above-
ground equipment and material, and we do not
today determine what sort of aboveground facili-
ties are part of a "well" as the term is used in
MCL 125.271; MSA 5.2963(1).

On remand, the circuit court shall reconsider its
determination that this case involved impermissi-
ble "contract zoning." If the circuit court adheres
to that determination, it shall provide findings of
fact and conclusions of law in support of that
determination.

RILEY, C.J., and BRICKLEY, CAVANAGH, BOYLE,
ARCHER, and GRIFFIN, JJ., concurred.

LEVIN, J. (*separate opinion*). I would grant leave
to appeal.

I

I adhere to the view that peremptory reversal
should be reserved for those cases in which the
law is settled and no factual assessment is re-

---

[16] The Michigan Townships Association has moved for leave to file a
brief amicus curiae. In light of our disposition of this case, we deny
the motion as moot.

quired.[1] Because the law is not settled in the instant case, peremptory disposition is not appropriate.

II

It appears from the opinion of the Court of Appeals that the Director of the Department of Natural Resources, who acts as the Supervisor of Wells,[2] issued permits for the installation of an underground pipeline from a well in Macomb County to the appellees' gas processing plant and for the continued operation of the plant. Presumably, the DNR believes that it is authorized to so provide respecting gas pipelines and processing plants. Appellees assert they have expended millions of dollars building a ten-mile pipeline traversing several townships on the strength of the DNR permits.

Were we to grant leave to appeal, we could invite a brief on behalf of the DNR. We should not construe this statute regarding the authority of the DNR without providing the DNR with an opportunity to be heard.

While, arguably, the words of the statute are

---

[1] Roek v Chippewa Bd of Ed, 430 Mich 314, 322; 422 NW2d 680 (1988) (LEVIN, J., separate opinion):

> See Schweiker v Hansen, 450 US 785, 791; 101 S Ct 1468; 67 L Ed 2d 685 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare disposition, usually reserved by this Court for situations in which the law is settled and stable, the facts are not in dispute, and the decision below is clearly in error"); Leis v Flynt, 439 US 438, 457-458; 99 S Ct 698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting) ("Summary reversal 'should be reserved for palpably clear cases of . . . error.' Eaton v Tulsa, 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)] [Rehnquist, J., dissenting]").

[2] MCL 319.3; MSA 13.139(3).

clear and unambiguous,[3] pipelines and a process-
ing plant may be necessary to permit any explora-
tion for and capture of gas or oil. When oil or gas
comes rushing out of the earth, there is a need to
contain and then to process and transport the gas
or oil. This may explain why the DNR may have so
construed its authority and the basis on which it
may be argued, and this Court on plenary consid-
eration might conclude, that the Legislature in-
tended the construction of the statute adopted by
the Court of Appeals.

---

[3] The statute speaks of the "location, drilling, completion, *operation*,
or abandonment of . . . wells" (emphasis added) (MCL 125.271; MSA
5.2963[1]). The term "operations" has been defined expansively in
other contexts. See *Liller v Logsdon*, 261 Md 367; 275 A2d 469 (1971)
("mining operations"); *Reimann v New York C R Co*, 267 NE2d 439
(Common Pleas Ohio, 1971) ("caused by operation of trains").

This Court has observed: ⸱
"It has been said [2A Sands, Sutherland Statutory Construc-
tion (4th ed), § 46.01, p 49] that '[i]n many instances, expres-
sions of the plain meaning rule may be a kind of verbal table
thumping to express or reinforce confidence in an interpreta-
tion arrived at on other grounds instead of a reason for it.'
Similarly, Professor Corbin [Corbin, Contracts, § 542, pp 109-
110] wrote that statements about 'plain and clear' meaning of a
writing 'assume a uniformity and certainty in the meaning of
language that do not in fact exist.' [*Shiffer v Gibralter Schools
Bd of Ed*, 393 Mich 190, 194; 224 NW2d 255 (1974).]"

Similarly see *People v Gilbert*, 414 Mich 191; 324 NW2d 834
(1982).
It has been said: "The notion that because the words of a
statute are plain, its meaning is also plain, is merely pernicious
oversimplification." *United States v Monia*, 317 US 424, 431; 63
S Ct 409; 87 L Ed 376 (1943) (Frankfurter, J., dissenting).
[*Killeen v Dep't of Transportation*, 432 Mich 1, 12, n 13; 438
NW2d 233 (1989).]