ADDISON TOWNSHIP v GOUT (ON REHEARING)

Docket No. 83379. Argued January 9, 1990 (Calendar No. 4). Decided
September 11, 1990.

Addison Township contracted in 1973 with Michigan Consolidated
Gas Company to permit the construction of a natural gas
processing plant within the township to be used exclusively to
process gas produced in the Leonard Field. In 1984, Michigan
Consolidated sold its interest to Peter Gout, doing business as
Lakeville Gas Associates. After Gout attempted to construct a
pipeline to obtain gas for processing from outside the Leonard
Field, the township brought an action in the Oakland Circuit
Court against Gout, Lakeville Gas Associates, and the Depart-
ment of Natural Resources, alleging that construction of the
pipeline and the plan to process gas from outside the Leonard
Gas Field violated its zoning ordinance and a special use permit
that had originally been issued to the Michigan Consolidated
Gas Company. The court, David F. Breck, J., dismissed the case,
finding that jurisdiction relative to wells is vested exclusively
in the Supervisor of Wells and that that type of zoning could
not be accomplished by contract. The Court of Appeals, CYNAR,
P.J., and BEASLEY and K. B. GLASER, JJ., in an opinion per
curiam, affirmed, but remanded on other grounds (Docket No.
98299). The Supreme Court, in lieu of granting leave to appeal,
reversed the decision of the Court of Appeals. 432 Mich 627
(1989). On rehearing, the decision was vacated. 433 Mich 1201
(1989). The township appeals.

In an opinion by Justice BRICKLEY, joined by Chief Justice
RILEY and Justices CAVANAGH, BOYLE, ARCHER, and GRIFFIN,
the Supreme Court held:

The exclusive jurisdiction of the Supervisor of Wells applies
only to oil and gas wells and does not extend to all aspects of
the production process.

1. The Township Rural Zoning Act, MCL 125.271; MSA
5.2963(1), is an enabling statute giving broad authority to
municipalities to regulate land use with one limitation: the

REFERENCES

Am Jur 2d, Gas and Oil §§ 146, 149.
See the Index to Annotations under Gas and Oil.

Supervisor of Wells has exclusive jurisdiction to regulate and control the drilling, completion, and operation of oil or gas wells. The statute is clear and unambiguous and must be applied as written. Implicit in the preclusion of township zoning relative to wells is that without the language, zoning jurisdiction would extend to such activity and in fact does so in other municipal zoning enabling acts. There is no implication by the Legislature to preëmpt all local regulation of the oil and gas industry.

2. The purposes of the separate regulatory acts do not conflict, nor do they suggest that uniformity is necessary to effectuate these distinct legislative goals. The duty of the Supervisor of Wells to prevent waste as set forth in the oil, gas, and minerals act, clearly differentiates between the supervisor's role at each phase of the production of natural resources.

Justice LEVIN, concurring in part, agreed that the defendants' argument, to the extent based on permit requirements for the transportation and processing of oil and gas, should be rejected since the permits were not issued by the Supervisor of Wells, but rather were acquired from the Department of Natural Resources and the Michigan Public Service Commission for a limited purpose. Further, the Director of the DNR, who acts as the Supervisor of Wells, has not sought to exercise authority under the oil, gas, and minerals act. Whether or not processing plants and pipelines fall within the exclusive jurisdiction of the Supervisor of Wells, processing plants and pipelines may, if the supervisor chooses to exercise authority in particular circumstances, be within his nonexclusive but primary jurisdiction under the oil, gas, and minerals act.

There is no need to construe the Township Rural Zoning Act as a limitation on the authority of the Supervisor of Wells under the oil, gas, and minerals act, such construction being unnecessary for decision. Nor is there a need to opine that the Legislature did not intend to vest the Supervisor of Wells, through the oil, gas, and minerals act, with regulatory control over the entire oil and gas industry. Nor does it follow that because there is no limitation in the County Rural Zoning Enabling Act or the city or village zoning act comparable to the limitation in the Township Rural Zoning Act that zoning jurisdiction under the county and city or village zoning acts is not limited by the authority of the Supervisor of Wells under the oil, gas, and minerals act, and that zoning jurisdiction under the county and city or village zoning acts extends to such activity and in fact does so in the other municipal zoning enabling acts.

Reversed and remanded.

171 Mich App 122; 429 NW2d 612 (1988) reversed.

GAS AND OIL — SUPERVISOR OF WELLS — EXCLUSIVE JURISDICTION.
    The exclusive jurisdiction of the Supervisor of Wells applies only
    to oil and gas wells and does not extend to all aspects of the
    production process (MCL 125.271; MSA 5.2963[1]).

*Robert L. Bunting* and *L. Nicholas Treinen* for
the plaintiff.

*DeMarco & Sage, P.C.* (by *John A. DeMarco*), for
defendants Gout and Lakeville Gas Associates.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Thomas J. Emery,
James E. Riley,* and *Roland Hwang,* Assistant
Attorneys General, for defendant Michigan De-
partment of Natural Resources.

Amici Curiae:

*Mika, Meyers, Beckett & Jones* (by *Michael C.
Haines* and *John M. De Vries*) for Michigan Oil
and Gas Association.

*Bauckham, Reed, Sparks, Rolfe & Thomsen, P.C.*
(by *John H. Bauckham* and *Carol L.J. Hustoles*),
for Michigan Townships Association.

### ON REHEARING

BRICKLEY, J. Addison Township and Michigan
Consolidated Gas Company entered into a contract
in 1973 which allowed Michigan Consolidated to
construct a natural gas processing plant within
the township. The plant was intended to be used
exclusively for gas produced from Leonard Field.
In 1984, Michigan Consolidated sold its interest in
the plant to defendant Gout, doing business as
Lakeville Gas Associates.

The township subsequently filed this lawsuit as

a result of defendant's attempt to construct a pipeline for the purpose of processing gas from outside Leonard Field. Defendant complied with state and federal regulations, obtaining all the permits necessary to construct the pipeline. The complaint asserts, inter alia, that defendant's actions violated its zoning ordinance and special use permit.

Plaintiff's complaint was dismissed on the grounds that the Supervisor of Wells had exclusive jurisdiction and that this type of zoning could not be accomplished by contract. The Court of Appeals affirmed these findings, but remanded the case on other grounds. 171 Mich App 122; 429 NW2d 612 (1988). Plaintiff appealed in this Court, and, in lieu of granting leave to appeal, we reversed the decision of the Court of Appeals in an opinion per curiam. 432 Mich 627; 443 NW2d 139 (1989). Defendant filed a motion for rehearing, and we subsequently vacated our opinion and granted leave to appeal. 433 Mich 1201; 444 NW2d 528 (1989).

The issue before us is one of statutory construction, specifically, whether or not processing plants and pipelines fall within the exclusive jurisdiction of the Supervisor of Wells pursuant to MCL 125.271; MSA 5.2963(1).[1]

---

[1] The township board of an organized township in this state may provide by zoning ordinance for the regulation of land development and the establishment of districts in the portions of the township outside the limits of cities and villages which regulate the use of land and structures; to meet the needs of the state's citizens for food, fiber, *energy, and other natural resources,* places of residence, recreation, *industry, trade,* service, and other uses of land; to insure that use of the land shall be situated in appropriate locations and relationships; to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities; to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements; and to promote public health, safety, and welfare. . . . A township

After entertaining oral argument, and given further consideration, we are convinced that the rule set forth in our earlier opinion is the correct result.

The Township Rural Zoning Act (TRZA) is an enabling statute which gives authority to a municipality to regulate land use. The statute is a broad grant of authority with one limitation: the Supervisor of Wells has exclusive jurisdiction to regulate and control the drilling, completion, and operation of "oil or gas wells." The statute is clear and unambiguous and accordingly must be applied as written. We hold that the exclusive jurisdiction of the Supervisor of Wells applies only to oil and gas wells and does not extend to all aspects of the production process. The legislative intent is clear from the language of the statute, and drawing distinctions on such matters is clearly a legislative and not a judicial function.

We find unconvincing the defendant's arguments that the Legislature intended to vest in the Supervisor of Wells, through the oil, gas and minerals act (OGMA),[2] regulatory control over the entire oil and gas industry. First we note that the brief filed on behalf of the Department of Natural Resources concedes that this legislative scheme does not evidence any intent for the Supervisor of Wells to have absolute regulatory power over all phases of

board *shall not* regulate or control the drilling, completion, or operation of oil or gas wells, or other wells drilled for oil or gas exploration purposes and shall not have jurisdiction with reference to the issuance of permits for the location, drilling, completion, operation, or abandonment of those wells. The *jurisdiction relative to wells* shall be vested exclusively in the supervisor of wells of this state, as provided in Act No. 61 of the Public Acts of 1939, being sections 319.1 to 319.27 of the Michigan Compiled Laws. [MCL 125.271; MSA 5.2963(1). Emphasis added.]

[2] MCL 319.1 *et seq.*; MSA 13.139(1) *et seq.*

the industry. Second, the Legislature specifically referred to the OGMA and only "jurisdiction relative to wells" when it enacted the TRZA. Finally, defendant's argument is unpersuasive because the regulation of wells is only excluded as to townships. There is no limitation in the city or village zoning act.[3] This enabling act is substantially the same as the TRZA, granting to the individual municipality the authority to regulate land use and structures consistent with the needs of its citizenry regarding energy and other natural resources generally and without limitation. Implicit in the preclusion of township zoning "relative to wells" is that without the language zoning jurisdiction would extend to such activity and in fact does so in the other municipal zoning enabling act.

Defendant relies on the principles enumerated in *People v Llewellyn,* 401 Mich 314; 257 NW2d 902 (1977), to support its claim of intent by the state to occupy the entire regulatory field.[4]

> A municipality is precluded from enacting an ordinance if 1) the ordinance is in direct conflict with the state statutory scheme, or 2) if the state statutory scheme pre-empts the ordinance by occu-

---

[3] MCL 125.581; MSA 5.2931.

[4] In making the determination that the state has thus preempted the field of regulation which the city seeks to enter in this case, we look to certain guidelines.

First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is preempted.

Second, pre-emption of a field of regulation may be implied upon an examination of legislative history.

Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. . . .

Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest. [*Llewellyn, supra* at 322-324. Citations omitted.]

pying the field of regulation which the municipal-
ity seeks to enter, to the exclusion of the ordi-
nance, even where there is no direct conflict be-
tween the two schemes of regulation. [*Id.* at 322.]

Because there is no express intent to preëmpt
local regulation, except as to the zoning of wells,
we must determine if the Legislature has by impli-
cation preëmpted all local regulation of the oil and
gas industry. We hold that no such intent is
evidenced in the legislative scheme. To ascertain
legislative intent we look to the purposes of the
statutes.[5] The purposes of the separate regulatory
acts do not conflict, nor do they suggest that
uniformity is necessary to effectuate these distinct
legislative goals.[6] The duty of the Supervisor of
Wells to prevent waste as set forth in the OGMA
clearly differentiates between the supervisor's role
at each phase of the production of natural re-
sources. We find this action by the Legislature to
denote an apparent distinction when the term
"wells" was used in the TRZA.

The defendant's expansive view of the preëmp-
tive language in the TRZA to include all aspects of
the production process is also not supported by the
claim that uniformity is necessary because of per-
mit requirements before transporting and process-
ing oil and gas. The permits defendant received

[5] The purpose of the TRZA is to "provide for the establishment in
townships of zoning districts within which the proper use of land and
natural resources may be encouraged or regulated by ordinance,"
while the purpose of the OGMA is to prevent "unwarranted waste of
gas and oil and foster the development of the industry along the most
favorable conditions and with a view to the ultimate recovery of the
maximum production of these natural products."

[6] We appreciate the burdens the industry may face should a town-
ship prohibit land use for a processing facility. However, we cannot
invade an exercise of legislative discretion. Further, the Legislature
has adopted protective measures which limit a township's authority
to totally prohibit land use upon a showing of demonstrated need.
See, e.g., MCL 125.227a; MSA 5.2961(27a).

were not issued by the Supervisor of Wells, but rather were acquired from the DNR and Michigan Public Service Commission pursuant to other regulatory authority. Further, they were issued for only a limited purpose. We find defendant's assertion that merely because it was required to obtain permits that have a limited purpose it should be allowed to bypass municipal regulation lacking in authority and merit. Only in very rare instances will a permit issued for one purpose obviate local zoning laws.

For these reasons and those initially set forth in our opinion, we reverse the ruling of the Court of Appeals. The case is remanded to the Oakland Circuit Court for further proceedings consistent with this opinion. We again instruct the trial court that on remand it "shall reconsider its determination that this case involved impermissible 'contract zoning.' If the circuit court adheres to that determination, it shall provide findings of fact and conclusions of law in support of that determination." 432 Mich 637.

RILEY, C.J., and CAVANAGH, BOYLE, ARCHER, and GRIFFIN, JJ., concurred with BRICKLEY, J.

LEVIN, J. I concur, in part, because I agree that the defendants' argument, to the extent based on permit requirements for the transportation and processing of oil and gas,[1] should be rejected, and

---

[1] The opinion of the Court of Appeals stated:

> Lakeville also obtained a DNR permit allowing construction of an underground pipeline from a Macomb County well to the Addison Township processing plant. [*Addison Twp v Gout,* 171 Mich App 122, 124; 429 NW2d 612 (1988).]

The Attorney General states in his brief:

> A serious misconception has occurred regarding the nature of

with the following statement in the opinion of the Court:

The permits defendant received were not issued by the Supervisor of Wells, but rather were acquired from the DNR and Michigan Public Service Commission pursuant to other regulatory authority. Further, they were issued for only a limited purpose. We find defendant's assertion that merely because it was required to obtain permits that

various permits issued by state agencies in this matter. The Court of Appeals makes reference to a permit issued by the Michigan Department of Natural Resources (DNR) allowing temporary operation of the gas processing plant as well as another DNR permit allowing construction of an underground pipeline. The Court also makes reference to a ". . . permit to begin moving hydrogen sulfide, a natural gas, from Macomb County to Addison Township." *Addison Township v Gout,* 171 Mich App 122, 124; 429 NW2d 612 (1988). Those permits were not issued pursuant to acts administered by the Supervisor of Wells but, rather, pursuant to other regulatory programs administered by the DNR or the Michigan Public Service Commission (MPSC).

The "permit to operate" was a permit issued by the DNR under the Air Pollution Act, MCL 336.11; MSA 14.58(1). The permit allowing construction of the pipeline was issued pursuant to the Wetland Protection Act, MCL 281.701 *et seq.;* MSA 18.595(51) *et seq.,* because of work necessary to be performed in a regulated wetland. The permit to use the pipeline was actually a "well connection permit" which was not issued by the Supervisor of Wells but by the Michigan Public Service Commission under the Gas Transmission Act, MCL 483.101 *et seq.;* MSA 22.1311 *et seq.*

Defendant-Appellee Lakeville Gas Associates ("Lakeville") mischaracterizes the above permits in both its brief and appendix on appeal. The Air Pollution Permit is labeled in the appendix as a "Permit to Install by DNR"; the Wetland Protection Act permit is labeled by Lakeville as a "Permit to Construct Gas Pipeline Issued by DNR"; the well connection permit is mislabeled as a "MPSC Well Construction Permit." See Lakeville's Appendix, pp 1b-8b.

The Attorney General was informed by the Michigan Public Service Commission late last week that the Hillman 1-7 well ceased production in November, 1987. The Michigan Public Service Commission believes that the well was depleted at that time. The record in this case does not indicate whether or not any gas other than that from the Leonard Gas Field is being processed at Lakeville's Addison Township plant at this time.

have a limited purpose it should be allowed to bypass municipal regulation lacking in authority and merit. Only in very rare instances will a permit issued for one purpose obviate local zoning laws.[2]

I also concur because the Director of the DNR, who acts as the Supervisor of Wells,[3] has not sought to exercise authority under the oil, gas and minerals act.[4]

I

The Attorney General has filed a brief on behalf of the people and the DNR asking that this Court:

A. Reverse the Court of Appeals holding that the Supervisor of Wells has exclusive jurisdiction over the operation of the gas processing plant;[5]

---

[2] *Ante,* pp 815-816.

[3] MCL 319.3; MSA 13.139(3).

[4] 1939 PA 61, MCL 319.1 *et seq.*; MSA 13.139(1) *et seq.*

[5] The Attorney General states in his brief:

It is important to note that Addison Township was not attempting to regulate, through its zoning ordinance, oil or gas pipelines. Zoning ordinances which regulate the transmission of petroleum through townships may be contrary to various state regulatory schemes as well as more directly controlling or regulating oil and gas wells in conflict with the jurisdiction of the Supervisor of Wells.

Some of the confusion in this case may have arisen from Lakeville's mischaracterization of permits obtained from the DNR and MPSC. As mentioned earlier in this brief, the permits were not issued by the Supervisor of Wells and were not directly related to gas processing. Contrary to the impression left by Lakeville, the Supervisor of Wells did not seek to assert exclusive regulation over the location, construction or operation of this plant.

It is urged that this Court hold that the TRZA did not preclude the township from reasonable regulation of the location and duration of a gas processing plant where such regulation was not shown to regulate or control the operation of oil and gas wells or to interfere with the authority vested in the Supervisor of Wells or the Michigan Public Service Commission.

B. Affirm the trial court's determination that
the ordinance was not breached by Lakeville's use
of the plant;[6] and

C. Affirm the Court of Appeals determination as
to the Inland Lakes and Streams Act, Wetlands
Protection Act, and MEPA issues.[7]

---

6 The Attorney General states in his brief:

While there may have been an implicit 1973 understanding
that the processing plant was intended for Leonard Gas Field
natural gas, such an understanding is not in the record and an
examination of the Agreements entered as exhibits (Plaintiff-
Appellant's Exhibits 1 and 4) do not on their face appear to
indicate any prohibition by the township upon the use of the
processing plant for non-Leonard Gas Field natural gas as a
condition of the special use permit. Further, there has been no
evidence presented which would establish that the Leonard Gas
Field is now or soon to be depleted where such could entail a
phase-out or imminent dismantling and restriction of the opera-
tion of the plant.

Reversal is warranted only if the trial court's findings are
clearly erroneous. *Odette v Liquor Control Comm,* 171 Mich
App 137, 140-141; 429 NW2d 814 (1988); *Smith v Lumbermen's
Mutual Ins Co,* 101 Mich App 78, 86; 300 NW2d 457 (1980), lv
den 411 Mich 873 (1981). On this record the trial court did not
err in finding that the use of land is not a violation of the local
township zoning ordinance.

Further, because the ordinance was not violated, the trial
court properly declined to invoke the nuisance per se provision
of the TRZA, MCL 125.294; MSA 5.2963(24).

7 The Attorney General states in his brief:

The trial court and the Court of Appeals properly ruled with
respect to the lack of jurisdiction of the courts to hear Plaintiff-
Appellant's Wetland Protection Act, 1979 PA 203, MCL 281.701
*et seq.;* MSA 18.595(51) *et seq.,* and Inland Lakes and Streams
Act, 1972 PA 364, MCL 281.951 *et seq.;* MSA 11.475(1) *et seq.*
claims. Plaintiff-Appellant clearly failed to exhaust its adminis-
trative remedies. Both the Wetland Protection Act, *supra,* and
Inland Lakes and Streams Act, *supra,* require exhaustion of
administrative remedies before actions can be brought under
the acts.

The Court of Appeals correctly ruled that the Michigan
Environmental Protection Act, 1970 PA 127, MCL 691.1201 *et
seq.;* MSA 14.528(201) *et seq.* (MEPA), does not require exhaus-
tion of administrative remedies before judicial relief is sought.
*Ray v Mason Co Drain Comm'r,* 393 Mich 294; 224 NW2d 883
(1975). The Court of Appeals reversed the lower court to the

II

The opinion of the Court states that the question presented is "whether or not processing plants and pipelines fall within the exclusive jurisdiction of the Supervisor of Wells pursuant to [the Township Rural Zoning Act] MCL 125.271; MSA 5.2963(1)."[8] This Court's order granting leave to appeal did not state a question or limit the grant.[9] Whether or not processing plants and pipelines fall within the "*exclusive* jurisdiction" of the Supervisor of Wells, processing plants and pipelines may, nevertheless, if the Supervisor of Wells chooses to exercise authority in particular circumstances, be within his nonexclusive but primary jurisdiction under the oil, gas and minerals act. The Director of the DNR did not, however, seek, in the instant case, to exercise his authority under the oil, gas and minerals act.

III

Because it is unnecessary to the decision, I

___

extent that the trial court dismissed Addison Township's MEPA claims, and remanded the case to the court below with directions to proceed to trial on the MEPA claims stated in Plaintiff's complaint.

However, as stated in the DNR's affirmative defense, Addison Township has failed to allege that the conduct of the Defendant Lakeville has or will, by the transportation of natural gas for processing into the township or the processing of such natural gas as opposed to processing solely Leonard Gas Field natural gas, pollute, impair or destroy the air, water or natural resources or the public trust therein. MCL 691.1203(1); MSA 14.528(203)(1). Plaintiff-Appellant Addison Township has failed to state a sufficient claim that imminent or actual environmental harm or likelihood of harm will occur and it is urged that the Court, when remanding this issue, allow the parties to file pretrial motions seeking summary disposition of the MEPA claim.

[8] *Ante,* p 812.

[9] *Addison Twp v Gout,* 433 Mich 1201 (1989).

would not construe the Township Rural Zoning Act[10] as a limitation on the authority of the Supervisor of Wells under the oil, gas and minerals act. While the Attorney General acknowledges that the oil, gas and minerals act does not provide the Supervisor of Wells "with any specific exclusive authority over pipelines or gas processing facilities," and that a township may enact zoning ordinances affecting the location of gas processing facilities, and that the location of gas processing plants is "not always critical to the operation of the wells," the Attorney General states:

> Conceivably, a particular location and operation of certain facilities *might be essential* to the safe, efficient and economical production from a well such that a zoning ordinance effectively but impermissibly "regulates or controls" the location, drilling and *operation of a well in violation of the TRZA*. Based on the limited record in this case it does not appear that such a scenario exists. [Emphasis added.]

The Court's construction of the statutes does not leave room for accommodation of both the concerns of the state and those of the local community.[11]

Nor do I see a need to opine that the Legislature did not intend to vest the Supervisor of Wells, through the oil, gas and minerals act, with "regu-

---

[10] MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*

[11] The Attorney General states in his brief:

> The TRZA provides townships with a means of addressing legitimate interests in the location of gas processing plants which affect the character of community and impact development but do not interfere with the exclusive jurisdiction of the Supervisor of Wells. There is room for accommodation of both the state's concerns and those of the municipality. *Detroit Edison v City of Wixom,* 382 Mich 673; 172 NW2d 382 (1969).

latory control over the entire oil and gas indus-
try."[12]

Nor does it follow that because there is no
limitation in the city or village zoning act[13] compa-
rable to the limitation in the Township Rural
Zoning Act, stating that "jurisdiction relative to
wells shall be vested exclusively in the supervisor
of wells,"[14] that zoning jurisdiction under the city
or village zoning acts is not limited by the author-
ity of the Supervisor of Wells under the oil, gas
and minerals act, and that zoning jurisdiction
under the city or village zoning acts extends "to
such activity and in fact does so in the other
municipal zoning enabling act."[15]

---

[12] *Ante,* p 813.

[13] MCL 125.581; MSA 5.2931.

[14] MCL 125.271; MSA 5.2963(1). See opinion of the Court, *ante,* p
812, n 1 for text.

[15] *Ante,* p 814. Nor is there need to opine:

  The duty of the Supervisor of Wells to prevent waste as set
  forth in the OGMA clearly differentiates between the supervi-
  sor's role at each phase of the production of natural resources.
  We find this action by the Legislature to denote an apparent
  distinction when the term "wells" was used in the TRZA. [*Ante,*
  p 815.]