ALCONA COUNTY v WOLVERINE ENVIRONMENTAL PRODUCTION,
INC

ALPENA COUNTY v WOLVERINE ENVIRONMENTAL PRODUCTION,
INC

Docket Nos. 196934, 199408. Submitted September 1, 1998, at Lansing.
Decided December 29, 1998, at 9:20 A.M. Leave to appeal sought.

Alcona County brought an action in the Alcona Circuit Court against
Wolverine Environmental Production, Inc., alleging that the defend-
ant had failed to obtain soil erosion and sedimentation permits
required by Alcona's soil erosion and sedimentation control ordi-
nance before undertaking earth-moving activities related to the
access roads, pipelines, and processing plants used by the defend-
ant's natural gas drilling activities and seeking injunctive relief and
assessment of civil fines. Alcona's soil erosion and sedimentation
control ordinance had ostensibly been adopted in accordance with
the authority granted pursuant to part 91 of the Natural Resources
and Environmental Protection Act (NREPA), MCL 324.9101 et seq.;
MSA 13A.9101 et seq., which grants to each county the responsibil-
ity for the administration and enforcement of rules adopted by the
Michigan Department of Environmental Quality (MDEQ) relative to
soil erosion and sedimentation control throughout the county. The
defendant answered that it had obtained a permit for each of its
wells from the supervisor of wells pursuant to part 615 of the
NREPA, MCL 324.61501 et seq.; MSA 13A.61501 et seq., that the Legis-
lature had delegated to counties only the limited authority to
enforce the rules promulgated by the MDEQ, and that its ancillary
well activities were specifically exempted from the permit require-
ment of Alcona's soil erosion and sedimentation control ordinance
because the defendant's activities were instead subject to the con-
trol and permit requirements of the supervisor of wells. The court,
Joseph P. Swallow, J., granted partial summary disposition for
Alcona, finding that the Legislature did not intend to vest in the
supervisor of wells exclusive power over ancillary well activities or
to preempt counties from implementing their own soil erosion pro-
grams, and dismissed the defendant's affirmative defenses that
challenged the county's jurisdiction to impose a county permit
requirement. The defendant appealed by leave granted.

Alpena County brought an action in the Alpena Circuit Court against Wolverine Environmental Production, Inc., alleging that the defendant had failed to obtain soil erosion and sedimentation control permits required by the soil and sedimentation control resolution adopted by Alpena pursuant to part 91 of the NREPA before undertaking earth-moving activities related to the access roads, pipelines, and processing plants used by the defendant in its natural gas drilling activities and seeking injunctive relief and civil fines. The defendant raised the same challenges to the jurisdiction of Alpena to require separate county permits as it had raised in the action brought by Alcona. Following the granting of partial summary disposition for Alcona in the Alcona action, Alpena moved for partial summary disposition and the striking of the defendant's jurisdictional defenses, asserting that the court was bound by collateral estoppel to follow the decision in the Alcona action. The court, Joseph P. Swallow, J., granted partial summary disposition for Alpena on the basis of collateral estoppel, striking the defendant's affirmative defenses relating to the question whether Alpena had jurisdiction to require a separate county soil erosion permit. The defendant appealed by leave granted. The appeals were consolidated.

The Court of Appeals *held*:

1. Because the question before the trial court was one of statutory interpretation, the question was a question of law. Accordingly, the trial court's decision is reviewed de novo by the Court of Appeals.

2. Part 91 of the NREPA provides that a county is responsible for enforcement of the rules promulgated by the MDEQ pursuant to part 91 and that a county may by resolution set forth a schedule of fees and other matters relating to the administration and enforcement of part 91 and the rules promulgated under part 91. Part 91 also provides that the MDEQ shall promulgate rules for a unified soil erosion and sedimentation control program, including provisions for permits relating to erosion control and sedimentation control. The administrative rules promulgated pursuant to part 91 establish a permit requirement for certain "earth changes," which are defined as man-made changes in the natural cover or topography of land that may result in or contribute to soil erosion or sedimentation of the waters of the state; however, those rules specifically exempt from the part 91 permit requirement the installation of those oil and gas wells that are under permit from the supervisor of wells.

3. Part 615 of the NREPA grants to the supervisor of wells jurisdiction and authority over the administration and enforcement of all matters relating to the prevention of waste and the conservation of

oil and gas in the state. Waste is defined to include unreasonable damage to underground waters and unnecessary damage to or destruction of the surface, soils, animal or aquatic life, property, or other environmental values from or by oil and gas operations.

4. A plain reading of the provisions of part 91 seem to evidence a clear legislative intent to vest counties with the limited authority to enforce only the rules promulgated by the MDEQ. Because the power specifically conferred by the Legislature on the counties was limited to the power to enforce only the rules promulgated by the MDEQ, a reasonable inference is that no other or greater power was intended. That the Legislature did not intend counties to have the power to adopt and enforce county provisions that were more restrictive than the provisions of the rules promulgated by the MDEQ is further evidenced by the fact that cities, villages, and townships were specifically empowered to adopt ordinances that were more restrictive than those provided in part 91 and the rules promulgated pursuant to part 91, but no similar specific authority was granted to counties. Because the stated purpose of part 91 is to implement a statewide program with uniform rules and guidelines, it should not be assumed that the Legislature intended a county-by-county implementation. Accordingly, the trial court erred in determining that counties have been granted the authority to implement their own independent soil erosion programs and permit requirements as a result of the exercise of the enforcement granted to counties under the provisions of part 91.

5. 1979 AC, R 323.1704 provides that a person who engages in an earth change must obtain a permit from the appropriate enforcing agency before making earth changes in connection with certain land-use activities relating to oil, gas, and mineral wells, "except the installation of those wells under permit from the supervisor of wells." Given the broad powers granted in part 615 to the supervisor of wells over the administration of wells, including the power to prevent waste, which includes prevention of unreasonable damage to underground waters and unnecessary damage to surface, soil, animals and aquatic life, and property, the phrase "installation of those wells under permit from the supervisor of wells" must not be read restrictively to mean only wellheads, but should be read to include access roads, pipelines, and processing facilities that are ancillary to the operation and maintenance of the well. Accordingly, where a permit for a well has been granted by the supervisor of wells pursuant to the provisions of part 615 and the supervisor of wells has found compliance with the conditions of the sediment act, the ancillary facilities of the well, as well as the wellhead, are

exempt from the earth change permit requirements of part 91 and the rules promulgated pursuant to part 91.

6. The trial court improperly granted partial summary disposition in the Alcona County action on the basis that counties could require soil erosion permits for facilities that are ancillary to a gas well that is subject to a permit issued by the supervisor of wells and improperly granted partial summary disposition in the Alpena County action on the basis of the erroneous determination in the Alcona action.

Reversed and remanded.

GAS AND OIL — SOIL EROSION — SUPERVISOR OF WELLS — NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT.

A county may not require an operator of a gas well to obtain a soil erosion permit from the county for earth-moving activities related to the access roads, pipelines, and processing facilities ancillary to the gas well where the operator of the gas well has obtained a permit from the supervisor of wells pursuant to the provisions of part 615 of the Natural Resources and Environmental Protection Act and the ancillary facilities are found by the supervisor of wells to be in compliance with the conditions of the sediment act (MCL 324.61501 *et seq.*, 324.9101 *et seq.*; MSA 13A.61501 *et seq.*, 13A.9101 *et seq.*).

*Thomas Jay Weichel,* for Alcona County.

*Robert A. Reuther,* for Alpena County.

*Mika, Meyers, Beckett & Jones, P.L.C.* (by *John M. DeVries* and *Daniel C. Brubaker*), for the defendant.

Before: MACKENZIE, P.J., and BANDSTRA and MARKMAN, JJ.

MARKMAN, J. Defendant, Wolverine Environmental Production, Inc., appeals by leave granted the trial court's partial grants of summary disposition in favor of plaintiffs Alcona County (Alcona) in Docket No. 196934 and Alpena County (Alpena) in Docket No. 199408. In each of these cases, consolidated on appeal, defendant failed to obtain soil erosion and sedimentation permits as required by plaintiff coun-

ties in connection with earth changes relating to defendant's natural gas well sites. In Docket No. 196934, the trial court determined that Alcona was not preempted by the Legislature from enforcing or implementing soil erosion programs, including a permit process; in Docket No. 199408, the trial court adopted the decision in Docket No. 196934 through collateral estoppel. We reverse and remand.

These cases involve a dispute over the authority granted by the Legislature to a county to manage soil erosion and sedimentation control under the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.*; MSA 13A.101 *et seq.* Defendant is involved in extensive natural gas drilling operations, including numerous gas wells, access roads, processing plants, and pipelines in Alcona and Alpena counties. For each of defendant's wells, defendant claims that it obtained a permit from the supervisor of wells,[1] Michigan Department of Environmental Quality (MDEQ), pursuant to part 615 of the NREPA, the supervisor of wells act, MCL 324.61501 *et seq.*; MSA 13A.61501 *et seq.*[2] Under part 91, the soil erosion and sedimentation control act, MCL 324.9101 *et seq.*; MSA 13A.9101 *et seq.*, also grants a county responsibility for the "administration and enforcement" of departmental rules concerning soil erosion and sedimentation control throughout the county. Ostensibly in accordance with this authority, Alcona adopted a soil

---

[1] " 'Supervisor' or 'supervisor of wells' means the department." MCL 324.61501(n); MSA 13A.61501(n). " 'Department' means the director of the department of natural resources . . . ." MCL 324.301(b); MSA 13A.301(b).

[2] During the pendency of this case, the Department of Natural Resources was divided into two separate organizations: the Department of Natural Resources and the Department of Environmental Quality. Presently, the supervisor of wells is under the jurisdiction of the MDEQ.

erosion and sedimentation control ordinance,[3] and Alpena adopted a resolution to enforce part 91. Each county required defendant to obtain a permit from the respective county for earth-moving activities related to the access roads, pipelines, and processing plants of defendant's well-drilling operations. Alcona's "ordinance" contained substantive language in addition to that contained in the MDEQ rules, which stated in part that "[a]ccess roads to well production sites shall be subject to permit requirements." Alpena's resolution did not contain additional substantive language, but Alpena did require a permit under the same circumstances as in the Alcona "ordinance."

Defendant failed to obtain permits from plaintiff counties in which its wells and ancillary activities were located. Thereafter, Alcona filed an action for injunctive relief and assessment of civil fines, and Alpena separately filed suit for injunctive relief, civil fines, and a surety for each well site, pipe or flow line, or central processing facility to ensure the installation and completion of required corrective or protective measures. In each case, defendant stated in its answer the affirmative defense that the Legislature delegated to counties only the limited authority to enforce the rules promulgated by the MDEQ. In addition, defendant argued that its well activities were specifically exempted from soil erosion permit requirements of the state rules, because its well activities were instead subject to the control and permit requirements of the supervisor of wells. Thus, where the state rules did not require a permit, plaintiffs had

---

[3] Alcona County contends that although its policy is labeled as an "ordinance," it is actually only a regulation to enforce part 91 and its administrative rules.

no separate authority for imposing such a requirement.

During the pendency of its suit for permanent injunctive relief, Alcona filed a motion for a preliminary injunction, then withdrew its motion when defendant agreed to file permit applications in accordance with Alcona's ordinance and deposit permit fees into an escrow account. At this time, Alcona also filed a motion for summary disposition pursuant to MCR 2.116(C)(9) and (C)(10), regarding the issue of its authority to administer and enforce the statute. Defendant filed a motion to dismiss for failure to join the MDEQ and the supervisor of wells as necessary parties. On June 24, 1996, the trial court heard oral arguments regarding the parties' motions. The trial court stated that it would consider only the issue of jurisdiction between the county and the supervisor of wells, further stating that the question was whether the NREPA "grants jurisdiction [to counties] for the enforcement of . . . access roads and pipelines." On July 17, 1996, the court issued its opinion and order, characterizing the case as a jurisdictional dispute between Alcona and the MDEQ/supervisor of wells regarding whether the supervisor of wells, under part 615, had essentially preempted Alcona's jurisdiction under part 91. The court found that the Legislature did not intend to vest power over ancillary well activities exclusively with the supervisor of wells or preempt counties from implementing their own soil erosion programs. Thus, the trial court granted Alcona's motion for partial summary disposition and struck defendant's affirmative defenses regarding jurisdiction.

Alpena also filed a motion for a preliminary injunction, which the trial court granted in June 1996.[4] In August 1996, Alpena filed a motion for summary disposition, seeking to strike defendant's affirmative defenses and jury demand. The trial court heard oral arguments on October 7, 1996, and Alpena asserted that collateral estoppel bound the trial court to follow its decision with regard to Alcona, because the issues were the same in both cases. On November 4, 1996, the trial court issued an order granting Alpena's motion for summary disposition on the basis of collateral estoppel and granting Alpena's motion to strike defendant's jury demand without prejudice, but denying the motion to strike defendant's entire answer. The court stayed the order pending the outcome on appeal. In April 1997, this Court granted leave to appeal in both cases and consolidated the appeals.

This Court reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law. *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 85; 520 NW2d 633 (1994). A motion for summary disposition pursuant to MCR 2.116(C)(9) seeks a determination whether the opposing party has failed to state a valid defense to the claim asserted against it. *In re Smith Estate*, 226 Mich App 285, 288; 574 NW2d 388 (1997). It is tested by the pleadings alone, with the court taking all well-pleaded allegations as true and determining whether the defenses are so clearly untenable as a matter of law that no factual develop-

---

[4] The same trial judge presided over both cases consolidated in this appeal.

ment could possibly deny the plaintiff's right to recovery. *Id.*

> MCR 2.116(C)(10) permits summary disposition when, except for the amount of damages, there is no genuine issue concerning any material fact and the moving party is entitled to [judgment] as a matter of law. A court reviewing such a motion must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the opposing party and grant the benefit of any reasonable doubt to the opposing party. [*Stehlik, supra* at 85.]

Summary disposition on the basis of collateral estoppel, as in the Alpena case here, is pursuant to MCR 2.116(C)(7), *Lichon v American Universal Ins Co*, 435 Mich 408, 427, n 14; 459 NW2d 288 (1990), and in considering a motion under that subrule, the court may consider all affidavits, pleadings, and other documentary evidence, construing them in the light most favorable to the nonmoving party. *McFadden v Imus*, 192 Mich App 629, 632; 481 NW2d 812 (1992).

In these cases, we are faced with a question of statutory interpretation, which is a question of law that this Court also reviews de novo. *People v Denio*, 454 Mich 691, 698; 564 NW2d 13 (1997). Construction of administrative rules is also governed by the principles of statutory construction. *Attorney General v Lake States Wood Preserving, Inc*, 199 Mich App 149, 155; 501 NW2d 213 (1993). The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *Shallal v Catholic Social Services of Wayne Co*, 455 Mich 604, 611; 566 NW2d 571 (1997). The first step in determining intent is to look to the specific language of the statute. *Barr v Mt Brighton, Inc*, 215 Mich App 512, 516-517; 546 NW2d 273 (1996). When statutory language is clear and

unambiguous, judicial interpretation to vary the plain meaning of the statute is precluded. *United States Fidelity & Guaranty Co v Amerisure Ins Co*, 195 Mich App 1, 5; 489 NW2d 115 (1992). "Statutory language should be construed reasonably and the purpose of the statute should be kept in mind." *Barr, supra* at 516. Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. *People v Lee*, 447 Mich 552, 557-558; 526 NW2d 882 (1994). Provisions of a statute are not construed in isolation, but, rather, in the context of other provisions of the same statute to give effect to the purpose of the whole enactment. *Guitar v Bieniek*, 402 Mich 152, 158; 262 NW2d 9 (1978). In examining the plain language of a statute, the maxim "*expressio unius est exclusio alterius*," the expression of one thing is the exclusion of another, means that the express mention of one thing in a statute implies the exclusion of other similar things. *Amerisure, supra* at 5-6. Similarly, "where powers are specifically conferred they cannot be extended by inference"; indeed, the inference is that it was intended that no other or greater power was given than that specified. *Eikhoff v Charter Comm of the City of Detroit*, 176 Mich 535, 540; 142 NW 746 (1913). Where an agency is charged to administer an act, as here, that agency's construction of the statute must be given deference, although it cannot be used to overcome the statute's plain meaning. *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 544; 565 NW2d 828 (1997).

In these cases, we must look to the NREPA to determine whether plaintiff counties had the authority to

require defendant to obtain a county permit pursuant to part 91 for "earth changes" to well access roads, pipelines, and processing facilities. Specifically, we must look to the interactions of part 91, the administrative rules enacted pursuant to part 91, 1979 AC, R 323.1701-323.1714, and part 615. The stated purpose of part 91 is to provide and implement "a unified statewide soil erosion and sedimentation control program." MCL 324.9103; MSA 13A.9103, MCL 324.9104; MSA 13A.9104. To accomplish this purpose, MCL 324.9105; MSA 13A.9105 provides:

> (1) A *county* is responsible for the *administration and enforcement of the rules* throughout the county except within a city, village, or charter township that has in effect an ordinance conforming to this section and except with regard to land uses of authorized public agencies approved by the department pursuant to section 9110.
>
> (2) The county board of commissioners, by *resolution,* shall designate a county agency, or a soil conservation district upon the concurrence of the soil conservation district, as the county enforcing agency responsible for administration and enforcement in the name of the county. The resolution may set forth a schedule of fees for inspections, plan reviews, and permits *and may set forth other matters relating to the administration and enforcement of this part and the rules.* A copy of the resolution and all subsequent amendments to the resolution shall be forwarded to the department. [Emphasis added.]

MCL 324.9101(10); MSA 13A.9101(10) defines "rules" as "the rules promulgated pursuant to section 9104." MCL 324.9104; MSA 13A.9104 states:

> The *department,* with the assistance of the department of agriculture, shall promulgate rules for a *unified soil erosion and sedimentation control program,* including provisions for the review and approval of site plans, land use

plans, or *permits relating to erosion control and sedimentation control.* The department shall notify and make copies of proposed rules available to state, local, county, and public agencies affected by this part for review and comment before promulgation. [Emphasis added.]

In accordance with these provisions in part 91, the Department of Natural Resources (now the MDEQ) promulgated administrative rules establishing, in part, permit requirements for certain "earth changes."[5] 1979 AC, R 323.1701-323.1714. Not all persons seeking to make "earth changes" are required to apply for a permit under part 91. Specifically, 1979 AC, R 323.1704 states, in pertinent part:

(1) A land owner or developer who contracts for, allows or engages in an earth change in this state shall obtain a permit from the appropriate enforcing agency prior to commencement of an *earth change which is in connection with any of the following land use activities* which disturb 1 or more acres of land, or if the earth change is within 500 feet of a lake or stream of this state:

\*        \*        \*

(g) Oil, gas, and mineral wells, *except the installation of those wells under permit from the supervisor of wells* and wherein the owner-operator is found by supervisor of wells to be in compliance with the conditions of the sediment act. [Emphasis added.]

In part 615, the supervisor of wells is granted broad powers over all matters related to the regulation of

---

[5] "Earth change" means a human-made change in the natural cover or topography of land, including cut and fill activities, that may result in or contribute to soil erosion or sedimentation of the waters of the state. Earth change does not include the practice of plowing and tilling soil for the purpose of crop production. [MCL 324.9101(5); MSA 13A.9101(5).]

oil and gas wells, including the prevention of waste and the conservation of gas and oil. MCL 324.61505, MSA 13A.61505 states:

> The supervisor has jurisdiction and authority over the administration and enforcement of this part and *all matters relating to the prevention of waste and to the conservation of oil and gas in this state.* The supervisor also has jurisdiction and control of and over all persons and things necessary or proper to enforce effectively this part and all matters relating to the prevention of waste and the conservation of oil and gas. [Emphasis added.]

"Waste" is defined in the statute to include, in part, "unreasonable damage to underground fresh or mineral waters," MCL 324.61501(p)(i)(B); MSA 13A.61501(p)(i)(B), and "unnecessary damage to or destruction of the surface; soils; animal, fish, or aquatic life; property; or other environmental values from or by oil and gas operations," MCL 324.61501(p)(ii)(B); MSA 13A.61501(p)(ii)(B). The supervisor of wells is specifically empowered to "do whatever may be necessary with respect to the subject matter stated in this part to implement this part, whether or not indicated, specified, or enumerated." MCL 324.61506(a); MSA 13A.61506(a). In addition, a person must apply for and receive a permit from the supervisor of wells before beginning to drill any well for oil or gas. MCL 324.61525; MSA 13A.61525. "A permit shall not be issued to an owner or his or her authorized representative who has not complied with or is in violation of this part or any of the rules, requirements, or orders issued or promulgated by the supervisor or the department." *Id.*

In the Alcona case below, and thus the Alpena case by the application of collateral estoppel, the trial

court characterized the case as a jurisdictional dispute between Alcona and the supervisor of wells. The exact issue addressed by the trial court is not completely clear. The court seemed to believe that the issue was one of preemption, although the court mentioned preemption with regard to both enforcement of part 91 and implementation of a county's own system. However, in our judgment, we must answer two questions to determine whether defendant was required to obtain permits from the plaintiff counties in these cases. First, we must determine whether counties are granted the authority under part 91 either to enforce the act or to implement their own rules regarding soil and sedimentation. Second, if counties cannot implement their own independent rules, we must determine whether part 91 limits a county's authority to require permits for well access roads, pipelines, and processing facilities, in addition to wellheads.

Accordingly, to answer the first question and determine the authority of the counties here, we must look first to the language of part 91. "It is elementary that a county has only such powers as have been granted to it by the Constitution or the state Legislature." *Alan v Wayne Co*, 388 Mich 210, 245; 200 NW2d 628 (1972). MCL 324.9105(1); MSA 13A.9105(1) states that "[a] county is responsible for the *administration and enforcement* of the rules." (Emphasis added.) Pursuant to this responsibility, a county shall implement a resolution, which "may set forth a *schedule of fees* for inspections, plan reviews, and permits and may set forth *other matters relating to the administration and enforcement of this part and the rules.*" MCL 324.9105(2);   MSA 13A.9105(2) (emphasis added).

"The rules" are defined by the statute to mean "the rules promulgated pursuant to section 9104." MCL 324.9101(10); MSA 13A.9101(10). A plain reading of these provisions seems to evidence a clear legislative intent to vest counties with limited authority to enforce only the rules promulgated by the MDEQ. The provisions do not contain language allowing counties to implement their own rules. Because the power to enforce the state rules was specifically conferred by the Legislature, a reasonable inference is that it was intended that no other or greater power be given. *Eikhoff*, *supra* at 540. Thus, we will not infer a greater power, such as the power to implement separate county rules, unless such power is manifest within the statute in some way.

Second, looking to the context in which the language specific to county authority is found, we note that MCL 324.9106; MSA 13A.9106 provides: "A city, village, or charter township *by ordinance may provide for soil erosion and sedimentation control* on public and private land uses within its boundaries . . . . An *ordinance may be more restrictive than . . . this part and the rules.*" (Emphasis added.) See *Guitar*, *supra* at 158. Thus, while the statutory language states that counties are to enact a resolution to "enforce" the MDEQ rules, cities, villages, and townships are expressly authorized to enact ordinances that are more restrictive than the rules. Under the maxim, "*expressio unius est exclusio alterius*," which means that the express mention of one thing in a statute implies the exclusion of another, *Amerisure*, *supra* at 5-6, the grant of authority to cities, villages, and townships to provide for ordinances more restrictive than the state rules necessarily implies a restric-

tion on county authority. While the Legislature could have similarly provided authority for counties to adopt ordinances more restrictive than the state rules if it wanted, the absence of such a provision implies that the Legislature intended that counties only adopt resolutions that are not more restrictive than the state rules. Counties are to merely "enforce" the state rules as given. In this case the maxim of interpretation supports the plain language analysis regarding county authority. See *Amerisure, supra* at 5-6.

Third, we recognize that the purpose of part 91 is to protect Michigan waters and soil from the pollution of soil erosion and sedimentation through the implementation of a statewide program with uniform rules and guidelines to be "used both statewide and by local entities." *Nemeth v Abonmarche Development, Inc*, 457 Mich 16, 27, n 4; 576 NW2d 641 (1998). Given the purpose of a unified statewide soil erosion and control program, a necessary inference is that the Legislature would not authorize the implementation of a wide variety of different policies throughout the state. Under the trial court's analysis allowing independent county implementation of soil erosion and sedimentation control plans, each county in the state could potentially enact a different set of rules. This interpretation would essentially vitiate the statute's purpose of uniformity. Although the Legislature could have chosen to provide specifically for a county-by-county implementation of policies, as it did with cities, villages, and townships in MCL 324.9106; MSA 13A.9106, we will not assume such a grant of authority in the face of the apparent purpose of a unified system of regulation. Overall, our reading of the statute, providing for county enforcement of a unified

policy set forth by the Legislature and the MDEQ, upholds the evident purpose of the statute, as well as its plain language.

In our judgment, based on these factors, the trial court improperly determined that counties were allowed to implement their own soil erosion programs in the Alcona case and thus improperly applied that determination in the Alpena case by collateral estoppel. Instead, counties are only granted the authority by the Legislature to enforce the rules promulgated by the MDEQ. Indeed, Alcona and Alpena do not seem to argue that they are granted any authority to implement their own rules. Rather, they argue that their actions were merely enforcement of part 91 and the administrative rules as they interpreted them. Defendant, however, asserts that even if the counties did have the power to enforce the rules, the permits issued under part 615 exempted it from the permit requirements for well pads, flow lines, surface facilities, and access roads. Accordingly, we must now address the second question at issue in these cases to determine whether plaintiffs were allowed to "enforce" part 91 permit requirements for ancillary well functions.

To determine whether the Legislature and the MDEQ intended that a part 91 permit be required for "earth changes" connected with the access roads, pipelines, and processing facilities of wells for which a part 615 permit has already been issued, we must again look first to the language of the statute and rules at issue. MCL 324.9112; MSA 13A.9112 mandates:

> A person shall not maintain or undertake a land use or *earth change governed by this part or the rules* or governed by an applicable local ordinance, except in accordance with

this part and the rules or with the applicable local ordinance and pursuant to a permit approved by the appropriate county or local enforcing agency. [Emphasis added.]

Accordingly, we next examine the rules to determine what earth changes they govern. 1979 AC, R 323.1704 states:

(1) A land owner or developer who contracts for, allows or engages in an earth change in this state shall obtain a permit from the appropriate enforcing agency prior to commencement of an *earth change which is in connection with any of the following land use activities* which disturb 1 or more acres of land, or if the earth change is within 500 feet of a lake or stream of this state:

\*     \*     \*

(g) Oil, gas, and mineral wells, *except the installation of those wells under permit from the supervisor of wells* and wherein the owner-operator is found by supervisor of wells to be in compliance with the conditions of the sediment act. [Emphasis added.]

As a preliminary matter, we assume, without deciding, that defendant's earth changes fulfilled the conditions of subrule 1704(1) in order to address the exception to the permit requirement.[6] The exception

---

[6] On appeal, defendant argues that a factual dispute existed concerning whether defendant's actual earth-moving activities were "earth changes" as defined by MCL 324.9101(5); MSA 13A.9101(5) or whether defendant's earth-moving activities "disturb[ed] one or more acres of land, or if the earth change [was] within 500 feet of a lake or stream" so as to require a permit. Defendant argues that this factual dispute should have precluded summary disposition for plaintiff in Docket No. 196934. However, we note that the trial court only granted partial summary disposition in favor of plaintiff, reaching only the issues regarding county authority and specifically not addressing these factual questions. Moreover, neither party has provided this Court with any factual basis for resolving these issues. Therefore, this opinion does not address these issues and is limited to the issues decided by the trial court.

language at issue specifically encompasses "the installation of those wells under permit from the supervisor of wells." While plaintiffs agree that the wellhead itself is included under this exception, they do not believe that access roads, pipelines, and processing facilities are included within this language and, thus, believe that counties should be able to enforce the permit requirement of subrule 1704(1) with respect to these activities regardless of the issuance of a part 615 permit.[7] However, the plain language of the exception is not limited to "wellheads" or any similar language explicitly limiting the permit exception to only the well site itself. Instead, the first portion of the rule language exempts "the installation of those wells . . . ." In our judgment, this language seems to include a broader range of well facilities than merely the wellhead. The installation of wells would seem to necessitate the use of access roads, pipelines, and processing facilities: A well could not be set up without such facilities; they are an indispensable and integral part of the installation of a well and thus reasonably included within the exception language.

Second, we note that the "installation of those wells" language cannot be viewed in isolation, but instead must be viewed in context. The rule itself does not simply limit the exception to the installation of wells, but further states that the exception applies to "those wells under permit from the supervisor of wells." Thus, we must look to part 615, the supervisor of wells act, to determine whether part 615 permits

---

[7] Although the trial court in the Alcona case found that defendant did have a permit from the supervisor of wells, there was no such finding in the Alpena case. Defendant claims to hold part 615 permits for all of its wells.

apply to the additional parts of a well at issue here. The supervisor of wells is granted broad powers over the administration of oil and wells in part 615. An important part of those powers is the prevention of waste, which includes, in part, "unreasonable damage to underground fresh or mineral waters," MCL 324.61501(p)(i)(B); MSA 13A.61501(p)(i)(B), and "unnecessary damage to or destruction of the surface; soils; animal, fish, or aquatic life; property; or other environmental values from or by oil and gas operations," MCL 324.61501(p)(ii)(B); MSA 13A.61501(p)(ii)(B). It is the declared policy of part 615 that "this part is to be construed liberally to give effect to sound policies of conservation and the prevention of waste and exploitation." MCL 324.61502; MSA 13A.61502. We find no language here limiting the authority of the supervisor of wells only to the "well site," but instead the supervisor of wells is granted authority over waste to soil and water in all "oil and gas operations." Thus, in our judgment, this includes soil erosion and sedimentation problems in connection with all parts of a well, not just a wellhead. We believe that the supervisor of wells exercises control over the soil erosion and sedimentation questions involving access roads, pipelines, and processing facilities of oil and gas wells because they produce waste in connection with oil and gas wells. Additionally, "[a] permit shall not be issued to an owner or his or her authorized representative who has not complied with or is in violation of this part or any of the rules, requirements, or orders issued or promulgated by the supervisor or the department." MCL 324.61525; MSA 13A.61525. Similarly, the part 91 permit exception itself requires not only the part 615 permit, but a

finding by the supervisor of wells that the owner/operator of the wells is in compliance with part 91. Therefore, a well owner will not receive a part 615 permit unless he complies with the waste requirements promulgated not just by the supervisor of wells, but also by the DNR/MDEQ. Considering the supervisor of wells' authority over all aspects of waste in relation to wellheads as well as ancillary well facilities, it appears that any permit issued by the supervisor of wells would necessarily include such ancillary well facilities. Consequently, in our judgment, "those wells under permit from the supervisor of wells" refers to wellheads and their necessary ancillary facilities, and earth changes that could potentially affect soil erosion and sedimentation control in connection with the ancillary parts of oil and gas wells would fall within the exception to the part 91 permit requirements.

Third, we again look to the purpose of part 91 to determine whether our reading of the language of the exception is at odds with the stated intent of the Legislature here. The Executive Legislative Analysis, HB 4709, January 18, 1972, provides that "[t]he purpose of this bill is to provide for a statewide soil erosion and sedimentation control program with uniform rules and guidelines which may be used both statewide and by local entities to control soil erosion and sedimentation." See *Nemeth, supra* at 27, n 4. With this purpose of uniformity in mind, it would not be logical for the Legislature to allow control over soil erosion and sedimentation to be placed with both the county enforcing agencies and the supervisor of wells. This dual control over access roads, pipelines, and processing facilities—which could come into conflict

because the supervisor of wells has its own rules for the prevention of waste and broader authority to do whatever is necessary for such prevention of waste—would undermine the part 91 purpose of statewide uniformity in this regard. The logical reason for the permit exception, consistent with the purpose of uniformity, would be to avoid duplicate regulation by both the supervisor of wells and the counties. The supervisor of wells must already enforce pollution controls relating to soil erosion and sedimentation control and has special expertise with the problems of oil and gas well waste. Therefore, in our opinion, it is not surprising that the Legislature would provide for a regulatory framework whereby the supervisor of wells enforced all of the waste management policies in relation to oil and gas wells, including soil erosion and sedimentation control. Thus, in reading the exception to the county permit requirement logically with this purpose, we believe that earth changes in connection with wellheads, as well as access roads, pipelines, and processing facilities under permit from the supervisor of wells, are exempt from the additional permit requirements of the part 91 rules.

In support of our analysis of the intent of the exception to the earth changes permit requirement in subrule 1704(1), we rely on an April 2, 1996, memorandum from the Director of the MDEQ, Russell J. Harding. This memorandum states that it is the position of the MDEQ that "a Part 615 permit to drill and operate shall exempt the following from the requirement to obtain a Part 91 permit: . . . well pads[,] . . . flow lines[,] . . . surface facilities[, and] . . . roads constructed solely for the purpose of access to well sites and surface facilities." In addition, the memorandum

"revise[d] and clarif[ied]" a previous, 1993 memo from the DNR. The 1993 memorandum stated that counties were to have control over flow lines for Antrim gas projects because such projects were generally not in compliance with part 91 and, thus, they did not qualify under the well permit exception. However, Harding determined that this finding was too broad, including some projects that were in compliance with part 91 and that would have been excepted from the permit requirement. Thus, Harding found that the 1993 memorandum did not comply with the requirements of the permit exception and that pipelines should generally be included within the permit exception. Also, the 1993 memorandum stated that counties had authority over access roads, a position with which Harding disagreed because access roads were a necessary and integral part of drilling and production operations, part 615 extended to all phases of oil and gas operations, including roads, and part 615 should take precedence under the exception.[8] Thus, the agency that promulgated the rules in question supports the conclusion here that ancillary well facilities are included within the exception to the well permit requirement of subrule 1704(1).

In contrast to this analysis, plaintiffs argue that two previous Attorney General opinions and the Supreme Court decision in *Addison Twp v Gout (On Rehearing)*, 435 Mich 809; 460 NW2d 215 (1990), mandate that we find that it is counties, and not the supervisor

---

[8] Although an agency's construction of a statute cannot be used to overcome a statute's plain meaning, *WMU Bd of Control, supra,* given that the position adopted by the MDEQ is plausible and is consistent with the language of the statute, it is entitled to reasonable deference, see *Michigan ex rel Oakland Co Prosecutor v Dep't of Corrections,* 199 Mich App 681, 692; 503 NW2d 465 (1993).

of wells, that are given control over soil erosion and sedimentation problems in the ancillary parts of wells. With regard to the two Attorney General opinions, plaintiffs argue that a finding that the general exceptions for mining and logging from part 91 did not extend to ancillary and support facilities, such as access roads, ore transport routes, and processing plants and mills, must be extended by analogy to the permit exception for wells here. See OAG, 1997-1998, No 6937, p ___ (April 7, 1997); OAG, 1993-1994, No 6818, p 192 (September 15, 1994). However, two things distinguish the mining and logging exceptions from the well exception in our case. First and foremost, mining and logging are exempted from *all* portions of part 91, and, thus, there is no soil erosion and sedimentation control over mining or logging. In contrast, wells are not contained within this general exception language and are not exempt from soil erosion and sedimentation control. Wells are exempt only from the specific requirement of obtaining a soil erosion permit from the county under part 91. Thus, we cannot merely apply the conclusions regarding the general exceptions to the more narrow permit exception. Second, following from the first factor, we note that the overall statutory purpose of protecting the environment is only furthered if the mining and logging language is narrowly construed. Because logging and mining are completely exempt from part 91, there is a gap in soil erosion legislation with respect to those activities. The Attorney General opinions were an attempt to limit the allegedly adverse effect the general exception would have on the purpose of the statute by applying the requirements of part 91 to the facilities that were ancillary to logging and mining

operations, such as access roads. In contrast, wells not only are subject to the requirements of part 91, but also are subject to the requirements of part 615. There is certainly no gap in soil erosion legislation with regard to wells or their integral facilities. Our reading of the permit exception simply exempts well owners from the requirement to obtain a part 91 permit, because they must already obtain a part 615 permit that requires adherence to soil erosion legislation. Thus, we see no need to follow the conclusions of the Attorney General opinions because the reasoning does not apply to the cases before us. See also *Michigan ex rel Oakland Co Prosecutor v Dep't of Corrections*, 199 Mich App 681, 691; 503 NW2d 465 (1993).

With regard to the Supreme Court decision in *Addison, supra*, the Court held in that case that pursuant to the language of § 1 of the Township Rural Zoning Act (TRZA), MCL 125.271; MSA 5.2963(1), the jurisdiction of the supervisor of wells preempted the TRZA only with respect to oil and gas well sites and did not extend to processing plants and pipelines. In our judgment, there are several important distinctions between *Addison* and the cases before us that make *Addison* inapplicable here. First, *Addison* dealt with statutory construction of the TRZA and its connection to the supervisor of wells provisions of the now-repealed oil, gas, and minerals act, MCL 319.1 *et seq.*; MSA 13.139(1) *et seq. Addison, supra* at 812. The *Addison* Court did not even mention part 91, part 615, or administrative rules promulgated pursuant to part 91. Therefore, *Addison* was concerned with the interrelationship of two statutes that are not at issue here and, thus, did not address the question of interrelationship of the parts of the NREPA, the question that is

before us here. Second, *Addison* is a case about the preemption of powers that were already granted by the Legislature to townships through the TRZA. *Addison, supra* at 814-815. In contrast, in our cases, preemption is not the question, because there is no separate statute empowering counties to regulate soil erosion permits. Instead, we must determine whether the Legislature intended to grant any authority to counties to enforce such permit requirements for ancillary well functions. Third, the construction in *Addison* necessarily dealt with completely different language than that found in part 91 and the administrative rules promulgated pursuant to part 91.[9] Although plaintiffs argue that we need only look to the word "wells" in both statutes, we disagree; when reading statutory language, we must take into account the context in which words are used. *People v Lee, supra* at 557-558.

Fourth, the *Addison* Court determined that the purpose of the TRZA, to encourage or regulate the proper use of land and natural resources, did not conflict with that of the supervisor of wells to prevent waste and that uniformity was not necessary to effectuate the purposes. *Addison, supra* at 815. However, here, the logical reason for the permit exception, given the part 91 purpose of uniform rules, would be to avoid duplicate regulation by both the supervisor of wells

---

[9] The TRZA states:

A township board shall not regulate or control the drilling, completion, or operation of oil or gas wells, or other wells drilled for oil or gas exploration purposes and shall not have jurisdiction with reference to the issuance of permits for the location, drilling, completion, operation, or abandonment of those wells. *The jurisdiction relative to wells shall be vested exclusively in the supervisor of wells of this state.* [MCL 125.271; MSA 5.2963(1) (emphasis added).]

and the counties. Thus, the different statutory purposes between part 91 and the TRZA also make *Addison* inapplicable to our cases. Fifth, in *Addison,* the DNR filed a brief in *support* of the township's right to zone, because the regulation of the location and duration of a gas-processing plant *in that case* did not regulate or control the operation of oil or gas wells or interfere with the authority vested in the supervisor of wells. *Addison, supra* at 818, n 5; 821 (LEVIN, J., concurring). However, the DNR further stated that certain zoning regulations of ancillary facilities that affected activities "critical to the operation of the wells" might be impermissible. Thus, as defendant argues, the DNR itself would not have simply limited the preemption of township zoning under the TRZA to well sites, but rather would instead have allowed preemption of township zoning where the zoning actually affected the supervisor of wells' exercise of jurisdiction relative to wells. This is consistent with our determination here, in part, that because the supervisor of wells has the authority to control soil erosion and sedimentation problems in ancillary well functions, the language of the permit exception applies to these ancillary well functions. Thus, although *Addison* appears in some respects to deal with an issue similar to that in the cases before us, we find the distinctions between these cases to be significant and, ultimately, dispositive that *Addison* does not compel a particular conclusion in the instant case.

On the basis of these factors, we conclude that the ancillary well facilities such as access roads, pipelines, and processing plants are included within the part 91 permit exception for "the installation of those wells under permit from the supervisor of wells . . . ."

1979 AC, R 323.1714(1)(g). Counties cannot require well owners and operators to obtain permits pursuant to part 91 for wellheads, access roads, pipelines, or processing facilities where they have a permit from the supervisor of wells and are found by the supervisor of wells to be in compliance with the conditions of the sediment act. *Id.* Allowing counties to require part 91 permits with regard to these ancillary well facilities would ignore the plain language of the exception, view such language in isolation in spite of the fact that the language refers to part 615, the supervisor of wells act, and thwart the purpose of the soil erosion and sedimentation control statute by allowing dual regulation. In our judgment, therefore, the trial court improperly granted Alcona's and Alpena's motions for summary disposition.[10]

Because the trial court also improperly determined in Docket No. 196934 that plaintiff counties could require part 91 soil erosion permits for ancillary well facilities under permit from the supervisor of wells and applied that determination to Docket No. 199408 through collateral estoppel, we reverse the trial court's grant of summary disposition in these cases

[10] Defendant appeals the trial court's adoption of the Alcona decision through collateral estoppel. However, because we determine that no county has the authority to require part 91 permits for the ancillary well facilities at issue here, we need not address the collateral estoppel issue. Defendant also appeals the trial court's order to strike its jury demand. Although we must remand this case for an application of this opinion, we have effectively disposed of the case through our determination that counties cannot require well owners with part 615 permits to obtain part 91 permits from the counties. During oral arguments on appeal, Alpena's counsel conceded that there was no reason to address the jury issue if this Court determined that Alpena could not require defendant to obtain a county permit for its ancillary well facilities that were under permit from the supervisor of wells. Thus, we will not address this issue either.

and remand for further proceedings in accordance with this opinion.

Reversed and remanded. We do not retain jurisdiction.