# STATE OF MICHIGAN

# COURT OF APPEALS

CHAD ECCLESTON,

Plaintiff-Appellant,

v

JOHN EDWARD PRISK and DENISH KUMAR
DAS, d/b/a DAS TRANSPORTATION,

Defendants-Appellees,

and

ROYAL OAK FORD SALES, INC., d/b/a
ROYAL OAK FORD,

Defendant.

UNPUBLISHED
May 21, 2015

No. 320173
Oakland Circuit Court
LC No. 2013-132677-NI

Before: WILDER, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

In this automobile negligence action, plaintiff, Chad Eccleston, appeals by right the trial court's order granting the motion for summary disposition under MCR 2.116(C)(10) by defendants,[1] John Edward Prisk and Denish Kumar Das, which does business as Das Transportation, on the ground that Eccleston failed to present evidence to establish that he suffered a threshold injury. Because we conclude the trial court erred when it determined that, as a matter of law, Eccleston failed to establish that he suffered a threshold injury, we reverse and remand for further proceedings.

Late at night in March 2010, Prisk was driving a large passenger van for his employer, Das Transportation. Eccleston, who was driving his pickup truck at the time, attempted to make a left turn onto Opdyke Road from a side street. Traffic was heavy at the time because a concert had just ended at the nearby Palace of Auburn Hills. After some drivers made space to allow

---

[1] The parties stipulated to the dismissal of defendant, Royal Oak Ford Sales, Inc., which does business as Royal Oak Ford, and it is not involved in this appeal.

-1-

Eccleston through, Eccleston drove through the traffic and attempted to enter the northbound lanes when Prisk, who was driving southbound down the center lane, drove into Eccleston's truck.

Eccleston did not immediately seek medical attention, but did see his physician, William Carion, M.D., two weeks later. Eccleston complained of neck pain and tingling in his fingers and Carion prescribed medication and physical therapy. After several months of physical therapy and slow, if any, improvement, Eccleston began to see Todd Best, M.D. for pain management.

Best noted ruptured and herniated discs in Eccleston's neck, as well as muscle spasms and limited range of motion. He referred Eccleston to a chiropractor and prescribed muscle relaxers for the spasms and pain. Throughout his treatment, Eccleston suffered from a limited range of motion and neck pain or muscle spasms. Best indicated that he witnessed the muscle spasms in Eccleston's neck. He also reported that trigger point injections and visiting a chiropractor were helping Eccleston's pain, but that Eccleston had not reached pre-accident levels of functioning and likely never would.

Eccleston also endured examination by two physicians, Neil Friedman, M.D., and Stephen Gross, D.O., who were hired by his own no-fault insurance carrier. Friedman reported that his examination revealed no "objective clinical evidence of functional impairment or disability." For that reason, he recommended that treatment be discontinued. Best disagreed and stated that Friedman's report could not be trusted considering the objective evidence of ruptured discs and visible muscle spasms.

Gross also examined Eccleston and opined that there was objective evidence of an injury, that Eccleston suffered pain and limited range of motion due to those injuries, and that Eccleston would likely never fully recover from the pain and limited range of motion. Best concurred with Gross and reported that Eccleston struggled greatly with overhead work, requiring breaks every 15 to 20 minutes. Finally, Best averred that the accident caused ruptured and herniated discs in Eccleston's neck and that those injuries would cause him pain and limited range of motion for the foreseeable future.

Eccleston testified at his deposition that he worked as a contractor and primarily remodeled homes. He enjoyed golfing, going to the gym, and lifting weights before the accident. After the accident, he was unable to perform certain types of work without pain. Eccleston testified that he struggled to carry shingles up a ladder to perform roofing, to hang drywall, and to paint. Although he could complete the jobs with the pain, they took longer, and he was more likely to hire a day laborer to do the work for him. He also testified that he had to golf less because of the pain and, after attempting to return to the gym after the accident, he found that he could not exercise because of the pain.

Eccleston sued Prisk and Das Transportation for automobile negligence and sought both noneconomic and economic damages.[2]  Prisk and Das Transportation moved for summary disposition under MCR 2.116(C)(10).  Specifically, they argued that Eccleston's injuries from the accident, if any, did not affect his general ability to lead his normal life and, therefore, did not amount to a serious impairment of body function.  The trial court agreed and granted their motion.

Eccleston then appealed in this Court.

On appeal, Eccleston argues the trial court erred when it dismissed his claim because he presented evidence that the injury at issue affected his general ability to lead his normal life.  This Court reviews de novo a trial court's decision on a motion for summary disposition.  *Alcona Co v Wolverine Environmental Prod, Inc*, 233 Mich App 238, 245; 590 NW2d 586 (1998).  A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint."  *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).  "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion."  *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).  Summary disposition is proper where there is no "genuine issue regarding any material fact."  *Id*.

The Legislature abolished tort liability arising from the ownership, maintenance, or use of an automobile unless one of several exceptions apply.  MCL 500.3135(3).  A person may sue to recover noneconomic damages—damages for pain and suffering—if the person has "suffered death, serious impairment of body function, or permanent serious disfigurement."  MCL 500.3135(1).  A serious impairment of body function "means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life."  MCL 500.3135(5).  The Michigan Supreme Court has interpreted this statute to contain three distinct requirements: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life."  *McCormick v Carrier*, 487 Mich 180, 195; 795 NW 2d 517 (2010).  Prisk and Das Transportation only challenged Eccleston's ability to establish the third requirement.

The proper question is "whether the impairment 'affects the person's general ability to lead his or her normal life.'"  *Id*. at 200.  "[T]o 'affect' the person's 'general ability' to lead his or her normal life is to influence some of the person's power or skill, i.e., the person's capacity, to lead a normal life."  *Id*. at 201.  "[T]his requires a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis."  *Id*. at 202.  "Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident."  *Id*.

---

[2] Although Eccleston did not have to establish a threshold injury under MCL 500.3135(1) in order to recover his economic losses, see MCL 500.3135(3)(c), Eccleston's lawyer did not object on that basis when the trial court dismissed his claim in its entirety.

-3-

Before the accident, Eccleston was able to paint, hang drywall, and roof without any pain. After the accident, he stated, he was barely able to complete those jobs, having great pain while doing all three and hiring day laborers to do the work he could not do. Further, Eccleston testified that he golfed less after his accident and could no longer lift weights or attend the gym, activities he did regularly before the accident. Prisk and Das Transportation urge us to affirm because it appears that Eccleston has found a way to continue his pre-accident life. However, according to *McCormick*, that is not the proper inquiry. Rather, "courts should consider not only whether the impairment has led the person to completely cease a pre-incident activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id*. This Court acknowledges that there is evidence that Eccleston still maintains a similar lifestyle, but there is also evidence that his general ability to lead his normal life has been significantly altered. Eccleston has reported that many of his activities now cause him a great deal of pain, and stated that he must hire day laborers to perform work he used to do on his own. Further, Best and Gross both opined that Eccleston's injuries from the accident were a prime cause of pain that will likely never go away. As such, there was evidence establishing that Eccleston's general ability to lead his normal life had been affected. See *id*. at 200-202.

The trial court erred when it determined that Eccleston failed to establish that his injuries affected his general ability to lead his normal life.

Reversed and remanded for further proceedings. We do not retain jurisdiction. As the prevailing party, Eccleston may tax his costs. MCR 7.219(A).

/s/ Kurtis T. Wilder
/s/ Donald S. Owens
/s/ Michael J. Kelly

-4-