# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

ROUMEL SHEENA and MAJIDA SHEENA,

        Plaintiffs-Appellants,

and

MAJID SHEENA,

        Plaintiff,

v

NADER ISSA and LIQUOR EXPRESS
LIVERNOIS, INC,

        Defendants-Appellees.

UNPUBLISHED
April 14, 2016

No. 326400
Wayne Circuit Court
LC No. 13-013644-CB

---

ROUMEL SHEENA and MAJIDA SHEENA,

        Plaintiffs-Appellants,

and

MAJID SHEENA,

        Plaintiff,

v

NADER ISSA and LIQUOR EXPRESS
LIVERNOIS, INC,

        Defendants-Appellees.

No. 326750
Wayne Circuit Court
LC No. 13-013644-CB

---

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

-1-

Plaintiffs, Roumel and Majida Sheena, appeal as of right a final judgment of the trial court ordering that no damages would be awarded and dismissing plaintiffs' action for payment of a promissory note. The named defendants in this matter were Liquor Express Livernois, Inc. (Liquor Express) and Nader Issa. On appeal, plaintiffs argue that the trial court clearly erred in its finding that no damages were proven by plaintiffs, that the trial court committed several evidentiary errors during the bench trial, and that the trial court erred in denying summary disposition on the issue of damages. We reverse and remand for further proceedings consistent with this opinion.

This case arises from a series of financial transactions between plaintiff, Roumel Sheena,[1] and defendant Nader. Nader owned Jim-George, a liquor store, along with his brother Nasser Issa. Sheena was Nader's accountant for personal and business matters, and had been for many years. In 2001, Sheena loaned Nader and Nasser $40,000. The loan was secured by real property and collateral in Jim-George. In 2005, Nader sold Jim-George. At the same time as the sale, Sheena released his loan and security interest in Jim-George and received a check for $40,000, notated "payoff promissory note." In addition, Sheena entered into a new promissory note with Nader for $40,000, secured by Nader's new business, defendant Liquor Express. The parties disputed the circumstances surrounding the 2005 transaction, leading to this lawsuit. The trial court granted plaintiffs' summary disposition regarding liability, and held a bench trial on the issue of damages. After trial, the court held that there were no damages, and dismissed the case.

Plaintiffs first argue that the trial court clearly erred in finding that there was no damages. We disagree. We review factual findings by the trial court for clear error. MCR 2.613(C). Clear error occurs when "the reviewing court is left with a definite and firm conviction that a mistake has been made." *Douglas v Allstate Ins Co*, 492 Mich 241, 256-57; 821 NW2d 472 (2012) (citation omitted). After the bench trial, the court held that the 2005 payment satisfied defendants' obligation on the 2005 note, holding that the 2005 transaction constituted a mere collateral shift between the 2001 note and the 2005 note. Based on the evidence presented at trial, we conclude that the trial court did not clearly err in finding that plaintiffs failed to prove damages. However, our disposition of plaintiff's remaining arguments on appeal will require the trial court to render judgment in this case based on additional evidence. Thus, we decline to address plaintiff's specific assertions regarding this issue in detail at this time.

To assist the trial court on remand, however, we do address plaintiff's assertion that in the joint pretrial order, defendants stipulated to owing either $6,514.72 or $38,484.96. Indeed, that admission is included in the joint pretrial order: "Depending on the Court's findings on the evidence, Defendants owe either $6,514.72 or $38,484.96 to Plaintiffs." In the order, defendants stated that, even assuming no cash payments were made on the 2001 loan, the most that would be owed as of 2005 was $40,000, plus $26,000 in interest (fifteen percent annually). The 2005 payment satisfied $40,000 of that obligation, in addition to the $7,000 in cash payments made in

---

[1] For the purposes of this opinion, Roumel Sheena will be referred to as "Sheena," as Majida Sheena was not actively involved in the case or the factual background.

2011 and 2012. The obligation would be further reduced if the trial court believed Nader's and Nasser's testimony regarding the cash payments made between 2001 and 2005. During closing arguments, defense counsel explained that, in deducting 26 $700 cash payments made between 2001 and 2005, the most that could be owed by defendants would be $6,514.72. However, defense counsel also asserted that the parties agreed the entire obligation would be satisfied by the 2005 payment plus the $7,000 payments in 2011 and 2012, indicating that Sheena accepted a lesser amount in interest. The court, in making its findings, stated that defendants' position was that "there [were] no damages in this and/or at worse case [sic] scenario $6,000[.]"

Unfortunately, defendants do not address this issue in their brief on appeal. It does appear that the trial court's holding, and defense counsel's position at trial, was contrary to defendant's statement in the joint pretrial order. On appeal, plaintiffs refer to the statement as an "admission," but provide no legal argument for its effect. The appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority. *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012).

However, the statement in the joint pretrial order does appear to be a stipulation by defendants. Parties to a civil action may stipulate to the facts of their case, see MCR 2.116(A), and regarding trial proceedings, see MCR 2.507(G). This Court has suggested that a stipulation may not be set aside unless there is evidence of mistake, fraud, or unconscionable advantage. *Limbach v Oakland Co Bd of Co Rd Com'rs*, 226 Mich App 389, 394; 573 NW2d 336 (1997). The trial court did not address whether defendants could argue a position that was inconsistent with the joint pretrial order, even though it was raised by plaintiffs at trial. Given the trial court's and parties' failure to adequately address this issue, we conclude the court must consider defendants' statement regarding damages on remand and determine its legal effect on defendants' position.

Plaintiffs next argue that the trial court erred in excluding attorney Peter Abbo as a witness. Abbo represented defendants in the 2005 transaction, and later filed this action on behalf of plaintiffs. Upon realizing the conflict, Abbo withdrew from representation, but was subpoenaed as a fact witness regarding the 2005 transaction. The trial court determined that attorney-client privilege existed, had not been waived by defendants, and released Abbo as a witness. We conclude that defendants waived attorney-client privilege regarding defendants' understanding of the 2005 loan documents. Further, attorney-client privilege does not attach to interactions with third parties or to communications intended to be disclosed to a third party. The trial court erred in determining that attorney-client privilege applied in these circumstances, and abused its discretion in releasing Abbo from his subpoena to testify.

A trial court's decision to admit evidence is reviewed for an abuse of discretion. However, when the trial court's decision to admit evidence involves a preliminary question of law, the issue is reviewed de novo, and admitting evidence that is inadmissible as a matter of law constitutes an abuse of discretion. *Barnett v Hidalgo*, 478 Mich 151, 158-59; 732 NW2d 472 (2007). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Id*. (citation omitted). The question whether the attorney-

client privilege applies to a communication is a question of law that this Court reviews de novo. *Leibel v Gen Motors Corp*, 250 Mich App 229, 236; 646 NW2d 179 (2002).

"The attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents. The scope of the attorney-client privilege is narrow, attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice." *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 618; 576 NW2d 709 (1998); see also *Leibel*, 250 Mich App at 236. In *Co-Jo, Inc v Strand*, 226 Mich App 108, 112; 572 NW2d 251 (1997), superseded on other grounds by MCR 7.208(I), our Court further explained that "[t]he purpose of the attorney-client privilege is to permit a client to confide in the client's counselor, knowing that the communications are safe from disclosure."

In *Howe v Detroit Free Press, Inc*, 440 Mich 203, 223-226; 487 NW2d 374 (1992), the Michigan Supreme Court set forth a balancing test for determining a waiver of privilege in the context of discovery. There is a presumption in favor of preserving the privilege and the burden of establishing a waiver rests on the party seeking discovery of the privileged material. *Id*. at 223. To show waiver, that party must demonstrate that the material to be discovered was relevant to the case and that the party's assertion of the privilege seriously undermined the ability to defend against the case. *Id*. at 225-226. If the court permits discovery of the privileged material, it "should be narrowly limited to those portions of the privileged material that bear directly on the issues at hand." *Id*. at 223.

Additionally, attorney-client privilege narrowly attaches to direct communication between an attorney and a client. *Reed Dairy Farm*, 227 Mich App at 618. It has been held that "[o]nce otherwise privileged information is disclosed to a third party by the person who holds the privilege, or if an otherwise confidential communication is necessarily intended to be disclosed to a third party, the privilege disappears." *Liebel*, 250 Mich App at 242. Additionally, "[a] communication is not confidential if it is made for the purpose of disclosure to third parties." *Yates v Keane*, 184 Mich App 80, 83; 457 NW2d 693 (1990).

Plaintiffs assert, first, that defendants waived the attorney-client privilege. Indeed, Nader testified that he considered the $40,000 payment in 2005 a full satisfaction of the 2001 debt. However, this explanation does leave a logical gap in the evidence: why would the parties enter into the 2005 transaction if it was immediately being paid? Nader's explanation at trial and throughout the proceedings was that he believed the documents he signed in 2005 were to pay off the loan, not to start another loan. Nader specifically attributed this to the advice of his attorney, Abbo. Whether Nader knowingly signed the documents was relevant to the proceedings, and defendants' assertion of privilege effectively prevented plaintiffs from asserting their claim. Nader's claim that he did not understand the 2005 transaction was critical to his explanation of the events. In order to find his version of the events "plausible," it was necessary to conclude, minimally, that Nader did not understand the documents he was signing. Without Abbo's testimony, plaintiffs could not rebut Nader's claim regarding his understanding. Thus, Nader waived his privilege as it related to his understanding and comprehension of the documents. In addition, we agree with plaintiffs that Abbo could also have testified regarding the interactions involving Sheena, as privilege would not attach in the presence of a third party or to communications intended to be disclosed to a third party. *Liebel*, 250 Mich App at 242.

-4-

Defendants assert that there was no waiver because the assertion of privilege did not undermine plaintiffs' ability to present their case. Defendants assert that Abbo could provide no further documentary evidence, and that Abbo's testimony would have further supported the court's holding that the transaction constituted a "collateral shift." However, defendants cannot provide a plausible explanation for why the parties would have entered into the 2005 transaction if the loan were going to be immediately paid off unless Nader's statement regarding Abbo's representation was true. This constitutes an important fact in the case, and failure to allow Abbo's testimony severely impaired plaintiffs' defense on that issue.

Defendants also claim that plaintiffs failed to provide an offer of proof of what Abbo would testify pursuant to MRE 103(a)(2). We disagree. The record showed the substance of what Abbo's testimony would be, especially considering the affidavit presented by plaintiffs. It was clear that defendants and the trial court understood the substance of Abbo's potential testimony. Indeed, it appears defendants make this argument in an attempt to circumvent plaintiffs' assertion that Sheena's presence destroyed attorney-client privilege during the transaction as defendants provide no other argument in regard to plaintiffs' argument on that issue.

Accordingly, the trial court erred in holding that attorney-client privilege existed and was not waived. While the trial court made its decision based on the lack of documentary evidence at trial, and, as defendants point out, Abbo will not be able to provide further documentary evidence, we believe Abbo's testimony may still impact the trial court's findings. Abbo's testimony would potentially discredit a significant portion of Nader's testimony, and lend credibility to Sheena. This shift could certainly convince the trial court that it was more likely than not that the parties agreed to enter into a new note for $40,000 in 2005. See *Hannay v Dept of Transp*, 497 Mich 45, 79; 860 NW2d 67 (2014). Thus, we conclude that the trial court should consider Abbo's testimony in making its determination.

Plaintiffs next argue that the trial court erred in relying on its beliefs as to the alleged Chaldean community practice of "street financing" in making its decision. We disagree. Again, findings of fact by the trial court are reviewed for clear error. MCR 2.613(C).

In *George v Travelers Indem Co*, 81 Mich App 106; 265 NW2d 59 (1978), this Court discussed the seriousness of allowing prejudice against the ethnicity of a party to impact the result of a case:

> Even in the occasional case where racial, ethnic, or religious matters are relevant to the issues, there is always the risk of incidentally arousing prejudice and this Court abhors injecting the poison of prejudice into any legal proceeding. The law is blind to differences in race, religion, and nationality. Appeals to prejudice overt or covert have no place in the administration of justice. [*Id*. at 114.]

It is reversible error to deny the opposing party a fair trial by making irrelevant and inflammatory ethnic allusions. *Id*. When ethnic allusions are made at trial, this Court must look at whether the statements were relevant to the issues, and if not, whether they were calculated to arouse prejudice. *Id*.

After reviewing the record, we conclude that that trial court's comments did not constitute reversible error. Initially, we reject defendants' assertion that there was evidence of street financing in the record. While Nader did state, "[t]hat's how you do interest on money in the street," there was no reference to the parties' ethnicity in the record, except for during the court's holding after trial. After proofs and arguments, the court held that plaintiffs could not prove damages, and particularly cited plaintiffs' lack of documentary evidence as the basis for its decision. The trial court did attribute the lack of documentary evidence to the practice of street financing in Chaldean communities. However, the record shows that the basis for the trial court's holding was the lack of documentary evidence, not plaintiffs' ethnicity. Regardless, as the trial court's opinions regarding the practices of a particular ethnicity were not necessary to its holding, on remand, the trial court should refrain from making such statements.

Plaintiffs next argue that the trial court erred in denying their motion for summary disposition on the issue of damages. We disagree. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Alcona Co v Wolverine Environmental Prod, Inc*, 233 Mich App 238, 245; 590 NW2d 586 (1998). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

Prior to trial, defendants asserted that the 2005 payment satisfied the 2001 loan, and that Nader did not understand the impact of the 2005 loan documents. Defendants relied on the December 2005 check, which was notated "payoff promissory note." Notably, the lack of a date in the notation created ambiguity regarding the payment. Thus, we do not agree that there was no question of fact regarding damages on the 2005 note. Addressing plaintiffs' final argument on appeal, should the trial court reach a different decision after remand, it should reevaluate its award of case evaluation sanctions to ensure the appropriateness of the award.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood